The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

**Mark Stephen ELLIS, Defendant–Appellant.**

No. 02CA2320.

Colorado Court of Appeals, Div. III.

March 23, 2006.

Rehearing Denied May 11, 2006.

Certiorari Denied Nov. 27, 2006.*

* Justice EID does not participate.

John W. Suthers, Attorney General, Cheryl Hone, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Patrick J. Mulligan, Denver, Colorado, for Defendant–Appellant.

TAUBMAN, J.

Defendant, Mark Stephen Ellis, appeals the judgment of conviction entered on a jury verdict finding him guilty of four counts of sexual assault on a child-position of trust, one count of sexual assault on a child-pattern, and one count of child abuse. We affirm.

Ellis was accused of sexually abusing his adopted daughter, V.E., beginning when she was seven years old.

Police searched Ellis's house and seized all the blankets that had been on V.E.'s bed. The Colorado Bureau of Investigation found semen stains on three of V.E.'s blankets and concluded that the DNA on the stains matched Ellis's DNA and that of his son.

Before the jury trial in August 2002, Ellis's trial counsel waived the recording of the entire voir dire proceedings. Ellis was convicted as charged and was later sentenced to fifteen years to life in prison.

On appeal, Ellis filed a motion for limited remand to reconstruct the record of voir dire proceedings, which was granted by this court. In March 2004, the trial court held a hearing to reconstruct the record of voir dire proceedings and reconstructed that part of the record, and subsequently, the appeal was recertified.

## I. Reconstruction of the Record

Ellis contends that his conviction must be reversed because the record of jury selection proceedings could not be fully reconstructed so that we may determine whether the trial court properly denied a challenge for cause to a juror with a prior felony conviction. We disagree.

To obtain relief on a substantive or procedural due process claim arising from an incomplete record, a defendant must demonstrate specific prejudice resulting from the state of that record. *People v. Rodriguez,*

914 P.2d 230 (Colo.1996). The appropriate remedy for prejudice allegedly suffered by a defendant as a result of an incomplete trial record is to remand the case to the trial court for a hearing to reconstruct the record. *People v. Rodriguez, supra.*

A reconstructed record is sufficient for appellate review if it contains enough information to make the defendant's argument ascertainable. *See People v. Jackson,* 98 P.3d 940, 943 (Colo.App.2004).

Ellis notes that a court generally must consider the *entire* voir dire examination of a juror when reviewing a denial of a challenge for cause. *See People v. Luman,* 994 P.2d 432 (Colo.App.1999). Therefore, he contends that he has been prejudiced by the trial court's incomplete reconstruction of the record because we will be unable to determine whether the trial court properly denied his challenge for cause. We disagree.

Here, the trial court was able to reconstruct enough of the record to determine that the juror in question was, in fact, a convicted felon and that she was not on her county's voter registration list. The trial court also determined that defense counsel passed the jury panel for cause, but during or after exercising his peremptory challenges, and before the jury was sworn, defense counsel challenged the juror in question for cause. The trial court then rejected the challenge for cause on the merits. Therefore, the partially reconstructed record is sufficient to permit appellate review of Ellis's argument that the juror should have been disqualified based on those facts. Accordingly, that the voir dire proceedings were not fully reconstructed does not constitute reversible error.

## II. Challenge for Cause

Ellis contends that the trial court erred in denying his challenge for cause to a convicted felon who sat on the jury. He argues that the trial court violated his right to a fair trial and equal protection because convicted felons may not serve on a jury and because the juror's name was not on her county's voter registration list. We disagree.

### A.

The Due Process Clauses of the United States and Colorado Constitutions guarantee every criminal defendant the fundamental right to a fair trial. *Morrison v. People,* 19 P.3d 668 (Colo.2000). An impartial jury is an essential element of the constitutional right to a fair trial. *Morrison v. People, supra.* A defendant's right to an impartial jury is violated if the trial court does not remove a juror who is biased against the defendant. *Nailor v. People,* 200 Colo. 30, 612 P.2d 79 (1980).

Two forms of bias may exist in potential jurors—implied and actual bias. *People v. Lefebre,* 5 P.3d 295 (Colo.2000). Implied bias, on the one hand, arises from external factors set forth in § 16–10–103(1), C.R.S. 2005, and is not rooted in what the juror thinks about matters related to the case, but rather in his or her relationships or circumstances. *See also* Crim. P. 24(b)(2). An impliedly biased juror is not susceptible to rehabilitation through further questioning because implied bias, once established, cannot be ameliorated by the juror's assurances that he or she can nonetheless be fair. *People v. Lefebre, supra.*

Actual bias, on the other hand, is a state of mind that prevents a juror from deciding a case impartially and without prejudice to a substantial right of one of the parties. Actual bias encompasses beliefs grounded in personal knowledge or a personal relationship, as well as beliefs grounded in the juror's feelings regarding the race, religion, and ethnic or other group to which the defendant belongs. A potential juror who exhibits actual bias is not automatically disqualified from serving; he or she may sit on the jury if he or she agrees to set aside any preconceived notions and make a decision based on the evidence and the court's instructions. *People v. Lefebre, supra.*

We will overturn a trial court's decision concerning a challenge for cause only upon an affirmative showing that the trial court abused its discretion. *Morrison v. People, supra.*

■ A trial court's failure to grant a valid challenge for cause "requires retrial only if the defendant used a peremptory challenge to excuse the prospective juror and then exercised all available peremptory challenges." *Ma v. People*, 121 P.3d 205, 210 (Colo.2005). However, a defendant may obtain a retrial when the trial court denies a valid challenge for cause after the defendant has used all his or her peremptory challenges. *Ma v. People, supra.*

■ Here, defendant challenged the juror with the felony conviction after he had exercised all his peremptory challenges, according to an affidavit from his trial attorney.

Prior to the repeal and reenactment of the Colorado Uniform Jury Selection and Service Act in 1989, a convicted felon was not allowed to serve on a jury, unless his or her right to vote had been restored. Colo. Sess. Laws 1971, ch. 215, § 78–1–8(2)(e) at 872; *People v. Binkley*, 687 P.2d 480 (Colo.App.1984), *aff'd*, 716 P.2d 1111 (Colo.1986).

The current and applicable version of the act no longer disqualifies convicted felons whose voting rights have not been restored from serving on a jury. Section 13–71–105(1), C.R.S.2005, now establishes the basic qualifications for juror service:

Any person who is a United States citizen and resides in a county or lives in such county more than fifty percent of the time, *whether or not registered to vote*, shall be qualified to serve as a trial or grand juror in such county. Citizenship and residency status on the date that the jury service is to be performed shall control.

(Emphasis added.) Section 13–71–105(2), C.R.S.2005, states that a prospective trial or grand juror shall be disqualified based on the following grounds:

(a) Being under the age of eighteen;

(b) Inability to read, speak, and understand the English language;

(c) Inability, by reason of a physical or mental disability, to render satisfactory jury service....

(d) Sole responsibility for the daily care of a permanently disabled person ....

(e) Residence outside of the county with no intention of returning ....

(f) Selection and service as an impaneled trial or grand juror ... within the preceding twelve months or being scheduled for juror service within the next twelve months....

(g) Appearance as a prospective juror in state court in accordance with the provisions of section 13–71–120 within the current calendar year....

Section 13–71–105(3), C.R.S.2005, states: "A prospective *grand* juror shall be disqualified if he or she has previously been convicted of a felony in this state, any other state, the United States, or any territory under the jurisdiction of the United States" (emphasis added).

When the General Assembly amends a statute, courts must presume that it intended to change the law. *People v. Covington*, 19 P.3d 15 (Colo.2001).

Thus, the current act no longer assumes that convicted felons hold an implied bias based on their circumstances and allows them to serve as trial jurors. Section 13–71–105(2) does not include felony convictions as a ground for disqualifying a potential juror. Moreover, § 13–71–105(3), the only section of the juror qualification statute that addresses felony convictions, specifically states that only prospective *grand* jurors are subject to disqualification for prior felony convictions.

To the extent that Ellis argues that the juror with a felony conviction may have harbored actual bias, he has not proved that her state of mind prevented her from deciding the case impartially. At the hearing to reconstruct the voir dire record, neither the original presiding judge nor the parties recalled any indication of actual bias by the juror in question.

Accordingly, the trial court did not err in impaneling the juror with a felony conviction.

**B.**

Ellis also argues that the juror with a felony conviction should have been disqualified because her name was not on the voter registration list for her county. We disagree.

Section 13–71–107(1), C.R.S.2005, establishes the procedure for compiling Colorado's master juror list, and states, in relevant part:

> Each year, the state court administrator shall obtain from the secretary of state a voter registration list for each county in the state. The state court administrator shall also obtain licensed driver lists from the department of revenue .... The state court administrator may obtain other lists of residents of the state as necessary and desirable. The voter registration lists, *as supplemented and modified by other lists,* may be used to compile the master juror list for the following year.

(Emphasis added.)

Thus, Colorado's master juror list may include names from voter registration lists, licensed driver lists, and any other lists of residents as necessary and desirable. Accordingly, the trial court did not err in swearing in a juror whose name was not on a county voter registration list.

## C.

Last, Ellis argues that the trial court violated his right to equal protection by allowing the juror with a felony conviction to serve on his jury while federal law prohibits most convicted felons from serving as jurors in similar criminal trials in the federal district court in Colorado. We disagree.

To state a claim for an equal protection violation, the defendant must establish that he or she was treated differently from similarly situated individuals. The threshold question is whether the persons allegedly subject to disparate treatment are in fact similarly situated, and if they are not, the equal protection challenge must fail. *People v. Watkins,* 126 P.3d 309 (Colo.App.2005).

In an equal protection challenge, the level of judicial scrutiny varies according to the type of classification involved and the nature of the right affected; the three standards of review that may apply are strict scrutiny, intermediate scrutiny, and rational basis review. *People v. Blankenship,* 119 P.3d 552 (Colo.App.2005).

In the absence of a traditionally suspect class, the implication of a fundamental right, or some other classification warranting review under intermediate scrutiny, we will apply a rational basis standard of review. *People v. Blankenship, supra.* Where we apply this standard, the challenging party must prove beyond a reasonable doubt that the classification bears no rational relationship to a legitimate legislative purpose or government objective, or that the classification is unreasonable, arbitrary, or capricious. *Pace Membership Warehouse v. Axelson,* 938 P.2d 504 (Colo.1997). Further, "[i]f any conceivable set of facts would lead to the conclusion that a classification serves a legitimate purpose, a court must assume those facts exist." *Christie v. Coors Transp. Co.,* 933 P.2d 1330, 1333 (Colo.1997).

A federal statute, 28 U.S.C. § 1865(b)(5), disqualifies a person from serving on a federal grand or petit jury if he or she "has a charge pending against him [or her] for the commission of, or has been convicted in a State or Federal court of record of, a crime punishable by imprisonment for more than one year and his [or her] civil rights have not been restored."

Here, even if we were to assume that Ellis is similarly situated to criminal defendants in federal court, a criminal defendant's asserted right to apply the federal criteria for prospective jurors is not fundamental. While a defendant has a fundamental right to a fair and impartial jury, *see People v. Simon,* 100 P.3d 487 (Colo.App. 2004), he or she does not have a fundamental right to a jury that does not include convicted felons. *See Young v. United States,* 694 A.2d 891 (D.C.1997) (not reasonable to conclude that convicted felons will always be biased against criminal defendants). Thus, we apply a rational basis standard of review to Ellis's equal protection claim.

Here, Ellis argues that Colorado courts should apply the same rationale some federal courts have relied on to support the federal statutory bar against convicted felons serving on a jury. He thus contends that the failure to do so would frustrate "the purpose of trying to achieve a reputable and reliable jury ... whose judgment society can re-

spect," *e.g., United States v. Best,* 214 F.Supp.2d 897, 905 (N.D.Ind.2002). We disagree.

Ellis has not proved beyond a reasonable doubt that no rational relationship to a legitimate legislative purpose or government objective exists for the General Assembly's decision to allow convicted felons to serve on juries in Colorado. Nor has he shown that this decision was unreasonable, arbitrary, or capricious. He merely argues that the probity of juries is adversely affected by jurors with felony convictions.

To the contrary, we conclude that § 13–71–105 serves the legitimate government objective of providing convicted felons with the opportunity to participate in the American judicial process once their sentences have been served. Thus, § 13–71–105 is rationally related to the legitimate legislative purpose of rehabilitating convicted felons and reintegrating them into society once their punishment is complete.

Accordingly, we conclude the trial court did not violate Ellis's right to equal protection by impaneling a juror with a felony conviction.

### III. Motions for Continuance and Collection of Physical Evidence

Ellis contends that the trial court abused its discretion in denying his fourth motion for a continuance and his motion for collection of physical evidence. He argues that the trial court violated his constitutional rights to present a defense, due process, fair trial, cross-examine his accuser, effective assistance of counsel, and fundamental fairness. We disagree.

The granting or denying of a motion for continuance lies within the sound discretion of the trial court. *People v. Rodriguez, supra.* A trial court abuses its discretion when it acts in a manifestly arbitrary, unfair, or unreasonable manner. *In re Marriage of Goodbinder,* 119 P.3d 584 (Colo.App. 2005). A trial court's decision to deny a motion for additional discovery is also reviewed for abuse of discretion. *See People v. Chard,* 808 P.2d 351 (Colo.1991).

Here, Ellis's fourth motion for continuance was filed on August 13, 2002. The original trial date was February 4, 2002. The subject of the motion was the need for additional testing of DNA material, which had been available to him for approximately six months. Ellis's counsel conceded that he did not obtain a DNA expert until June 2002.

On August 7, 2002, Ellis filed his motion to collect additional physical evidence that was in his former home. He claims that he was forced to file that motion because the prosecution prevented him from collecting that evidence. However, the prosecution actually prevented Ellis's investigator from collecting additional fibers from the couch and carpet at the home because these items were not included in the court's original order granting his investigator access to the home.

The trial court found that Ellis's motions for continuance and the motion to collect physical evidence were filed in good faith, but denied them because further delay of the trial would not be in the interest of justice. We perceive no abuse of discretion in the trial court's rulings.

### IV. Limitation of Expert Witness Testimony

Ellis contends that the trial court violated his constitutional right to present a defense by severely limiting the testimony of his expert witness. He also argues that the trial court broke its promise not to limit this testimony. We disagree.

Initially, we note that the trial court did not base its denial of Ellis's fourth motion for continuance on a promise not to restrict his expert witness's testimony at trial, but on its assessment of the interests of justice. After denying Ellis's fourth motion for continuance, the trial court merely stated that it would not limit the testimony of Ellis's expert witnesses as long as that testimony was relevant and supported by proper foundation. It made no other promises or representations to defendant.

At trial, the prosecution objected to statements by Ellis's expert witness regarding the aging of the DNA samples because the state-

ments exceeded the scope of the testimony as set forth in the notice Ellis provided to it. The trial court held a hearing outside the presence of the jury to establish the scope of the expert witness's testimony.

After hearing arguments by the parties, the trial court ruled that the testimony could continue as long as it remained within the scope of the notice given to the prosecution before trial. Once the testimony resumed, Ellis's attorney renewed his line of questioning about the aging of the DNA samples. The prosecution objected for a second time, and the trial court sustained the objection.

Ellis argues that the trial court severely impaired his ability to present a defense because testimony regarding the aging of DNA samples demonstrated that his semen could have been deposited on the blankets years before the alleged abuse occurred. However, by the time the prosecution renewed its objection, Ellis's expert witness had already presented substantial testimony regarding the aging of the DNA sample, stating that, in his experience, sperm DNA could be collected from blankets up to twenty-five years after being deposited.

Moreover, the trial court did not order the jury to disregard that portion of the testimony. The court only disallowed a follow-up question regarding the age of Ellis's semen stains on the blanket.

We therefore conclude that Ellis was not prejudiced by the trial court's ruling. Accordingly, Ellis's ability to present a defense was not severely limited by the trial court's ruling.

The judgment is affirmed.

Judge ROY and Judge LOEB concur.