**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Hassan McGLOTTEN, Defendant–Appellant.**

**No. 02CA1014.**

Colorado Court of Appeals, Div. III.

May 3, 2007.

Rehearing Denied June 28, 2007.

Opinion by Judge RUSSEL.

Defendant, Hassan McGlotten, appeals from the trial court's judgment of conviction in a criminal case. We reverse and remand for a new trial.

In 2000, McGlotten was indicted for a variety of criminal acts, including gang-related shootings, a kidnapping, and drug distribution. The indictment included a charge of racketeering activity under the Colorado Organized Crime Control Act (COCCA), § 18–17–101, et seq., C.R.S.2006.

In 2002, a jury convicted McGlotten of the COCCA violation, two counts of conspiracy to commit first degree murder, attempted manslaughter, prohibited use of weapons, false imprisonment, felony menacing, conspiracy to distribute a controlled substance, and first degree criminal trespass. The trial court sentenced him to thirty-nine years in prison.

## I. Appellate Delay

McGlotten contends that his convictions should be reversed because he was deprived of his due process right to a meaningful and speedy appeal. We agree.

### A. Introduction

In recent months, we have considered several cases in which defendants have argued that they were deprived of the due process right to a meaningful and speedy appeal. *See, e.g., People v. Whittiker,* —— P.3d ——, 2006 WL 3437556 (Colo.App. No. 01 CA2340, Nov. 30, 2006); *People v. Carmichael,* —— P.3d ——, 2007 WL 1299166 (Colo.App. No. 02CA0719, Feb. 8, 2007). In each of these cases, the appeal was delayed by a court reporter's failure to produce timely transcripts.

In *People v. Whittiker, supra,* we evaluated the defendant's claim of appellate delay under a four-factor test that is derived from the constitutional speedy trial test announced in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). We considered the following factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) any prejudice to the defendant resulting from the delay. We concluded that, although the first three factors weighed in the defendant's favor, the claim failed for lack of prejudice. *People v. Whittiker, supra.*

In *People v. Carmichael, supra,* we employed the same test and reached the same conclusion: although the first three factors weighed in the defendant's favor, the claim failed because the defendant was unable to show that he had been prejudiced.

▋ Both of these cases reflect the following views about prejudice in appellate delay cases:

1. Prejudice is an essential element. Even if the other factors weigh in the defendant's favor, no relief will be granted unless the defendant can demonstrate prejudice. *People v. Whittiker, supra,* —— P.3d at ——; *see United States v. Luciano–Mosquera,* 63 F.3d 1142, 1158 (1st Cir.1995); *Harris v. Champion,* 15 F.3d 1538, 1559 (10th Cir.1994).

2. The prejudice inquiry depends on the procedural context of the defendant's claim. If the claim is presented in an attempt to gain temporary release pending appeal, several factors are examined. But when the defendant asserts appellate delay on direct appeal, along with other contentions of trial error, the crucial inquiry is whether the delay has impaired the defendant's ability to prosecute the appeal. *People v. Whittiker, supra,* —— P.3d at ——; *see Harris v. Champion, supra,* 15 F.3d at 1566; *see also Simmons v. Beyer,* 44 F.3d 1160, 1170 n. 7 (3d Cir.1995) (collecting cases).

The *Whittiker* and *Carmichael* decisions thus raise an interesting question: In light of the durable nature of legal argument, how could appellate delay ever impair a defendant's ability to prosecute the appeal? We conclude that McGlotten's case provides an illustrative answer.

### B. Analysis

We evaluate McGlotten's case under the same four-factor test that we applied in *Whittiker* and *Carmichael.*

#### 1. Length of Delay

▋ A defendant must make a threshold showing of inordinate delay to trigger inquiry into the remaining factors. *People v. Whittiker, supra,* —— P.3d at ——. McGlotten filed a notice of appeal in May 2002. The five-year delay is clearly excessive and inordinate. *See United States v. Smith,* 94 F.3d 204, 209 (6th Cir.1996) (three-year delay is sufficient to trigger further inquiry); *Simmons v. Reynolds,* 898 F.2d 865, 868 (2d Cir.1990) (six-year delay is excessive); *United States v. Johnson,* 732 F.2d 379, 382 (4th Cir.1984) (two-year delay "is in the range of magnitude" for triggering further inquiry).

#### 2. Reason for Delay

Because the delay is inordinate, we must inquire into the reason for the delay. The trial court determined that the delay resulted

from the "illness of the assigned court reporter [and] the difficulty contract court reporters ... experienced in transcribing the notes." Because delays in the preparation of transcripts are generally attributable to the government, this factor weighs in McGlotten's favor. *See People v. Whittiker, supra,* — P.3d at —.

### 3. Assertion of the Right

Although an accused person may wish to avoid trial altogether, a convicted defendant rarely has an interest in delaying the appeal. It is therefore generally appropriate to view the defendant's filing of a notice of appeal as an assertion of the right to a speedy appeal. Thus, this third factor will generally weigh in the defendant's favor unless the state shows that the defendant affirmatively sought or caused delay. *See People v. Whittiker, supra,* — P.3d at —. Here, McGlotten filed a timely notice of appeal and actively sought relief on the grounds of delay. This factor weighs in his favor.

### 4. Prejudice

Because McGlotten has presented a claim of appellate delay on direct appeal, along with other contentions of trial error, we will grant relief only if he can show that the delay has impaired his ability to present his arguments on appeal. We conclude that McGlotten has made this showing. McGlotten has demonstrated that, as a result of appellate delay, he cannot present a potentially meritorious substantive contention.

### a. McGlotten's Substantive Contention

During its deliberations, the jury submitted a three-part question to the trial court:

1. Can we get an overhead projector to put up all counts as we make a decision[?]

2. Is it possible to apply a lesser charge to a count that doesn't already list a lesser charge? For example: Count 11 criminal attempt to commit manslaughter?

3. We are ready to listen to interview and transcript of interview.

The trial court made the following record concerning its response to the jury's question:

We are back on the record in the presence of the jury without the parties present. The jury submitted a series of questions which I marked as Court's Exhibit C and we got an overhead projector—we got an overhead projector delivered to your jury room upon your communications here so you can use an overhead projector; and there is a second question with regard to charges and I've done a written answer there that you can review when you get back to the jury room; and, third, we are ready to listen to the interview and the transcript of the interview.

On the basis of this exchange, McGlotten contends that the trial court committed constitutional error by failing to consult with defense counsel before answering the second part of the jury's question. *See Leonardo v. People,* 728 P.2d 1252, 1257 (Colo.1986) (it is constitutional error for a trial court to respond to a jury question without first making reasonable efforts to obtain the presence of defense counsel).

### b. Review Is Impossible

In August 2006, after considering the parties' written and oral arguments, we concluded that we were unable to resolve McGlotten's substantive contention on the existing record. We therefore remanded the case for reconstruction of the record. *See People v. Ellis,* 148 P.3d 205, 208 (Colo.App.2006) (the appropriate remedy for prejudice resulting from an incomplete trial record is to remand the case to the trial court for a hearing to reconstruct the record); *People v. Rodriguez,* 43 P.3d 641, 643 (Colo.App.2001) (same). We ordered the trial court to settle these factual issues:

1. Did the trial court consult, or attempt to consult, with defense counsel before it answered the jury's question?

2. What answer did the court provide in response to the jury's question?

In October 2006, the trial court held a hearing on these factual issues. The court heard the testimony of McGlotten's trial attorney, two jurors, various investigators, and a psychologist who is an expert on memory and suggestivity. Over McGlotten's objec-

tion, the court also accepted the affidavits of the trial prosecutors and former trial judge. Despite our directions to settle the record, the trial court did not resolve either of the factual questions presented. Instead, the court filed a report that summarized the evidence received on each question.

After reviewing the court's report and the evidence presented on remand, we again conclude that we cannot reliably evaluate McGlotten's substantive contention. Our conclusion is supported by three observations.

First, we cannot determine whether the trial court committed constitutional error. The trial transcript suggests, but does not conclusively establish, that the court answered the jury's question without consulting with defense counsel. The issue was not settled on remand: the trial court did not make findings, and the evidence was conflicting and inconclusive.

■ Second, we cannot determine whether the error, if it occurred, was harmless beyond a reasonable doubt. *See Leonardo v. People, supra,* 728 P.2d at 1257 (court's failure to consult with counsel before answering jury questions requires reversal unless the prosecution can show that the error was harmless beyond a reasonable doubt). The record does not contain the trial court's written answer, and the remand hearing did not yield a meaningful reconstruction. Although two witnesses testified that the trial court referred the jury back to the original instructions, we cannot make our own factual determination that this occurred. And even if we assume that fact, we cannot be satisfied that the court's written answer was correct without knowing what the court actually wrote. As with any written communication, a jury instruction may be misleading or erroneous even though the intended message is appropriate. *See People v. Brown,* 319 Ill.App.3d 89, 253 Ill.Dec. 399, 745 N.E.2d 173, 182–83 (2001) (conviction reversed where, among other things, an "inadvertent typographical omission" created a misleading instruction); *Pierce v. State,* 766 P.2d 365, 366–67 (Okla. Crim.App.1988) (conviction reversed where the elemental instruction said "attempt" instead of "intent"); *see also Gallagher v. Coo-*

*per,* 14 Ohio St.3d 41, 471 N.E.2d 468, 470 (1984) (per curiam) (new trial ordered where court's response to a jury question was "subject to more than one interpretation").

Third, contrary to the prosecution's argument, we cannot determine that the potential harm was limited to one count. On its face, the jury's question concerns any count for which a lesser charge was not listed. And an erroneous answer could possibly have influenced the jury's decision on many charges. (For example, the following answer would have directed the jury to enter guilty verdicts on many offenses: "Do not consider a lesser charge that is not listed; you may only enter guilty verdicts on the charged offenses."). We do not suggest, of course, that the trial court gave a misleading answer. We merely note that, because such an answer is possible, we cannot delimit the effect of a potential error—especially under a "harmless beyond a reasonable doubt" standard—without knowing what actually happened. *See Key v. People,* 865 P.2d 822, 827 (Colo.1994) ("Mere speculation cannot satisfy the prosecution's burden of showing that the constitutional error in this case did not contribute to the defendant's conviction.").

It is no longer possible to obtain a reliable answer to the factual questions presented. The witnesses on remand were unable to recall the pertinent events with any degree of specificity or certainty, and there is no reason to think that still further efforts toward reconstruction would be productive. Thus, the passage of time has placed the necessary information beyond our reach.

#### c. Reversal Is Required

Because we cannot evaluate McGlotten's substantive contention, we conclude that he has been prejudiced by appellate delay. Unlike in *Whittiker* or *Carmichael,* the delay has impaired McGlotten's ability to present a potentially meritorious claim of error. *See Simmons v. Beyer, supra,* 44 F.3d at 1170 (defendant suffered "actual prejudice" as a result of appellate delay "because his *Batson* claim is unreviewable on the reconstructed record").

We therefore conclude that McGlotten is entitled to a new trial. *See Simmons v. Beyer, supra.* In reaching this conclusion, we do not consider whether the delay has impaired McGlotten's ability to present a defense on retrial. This contention is more appropriately addressed by the trial court as a speedy trial claim under *Barker v. Wingo, supra. See People v. Whittiker, supra,* ⸺ P.3d at ⸺ (citing *Rheuark v. Shaw,* 628 F.2d 297, 303 n. 8 (5th Cir.1980)).

## II. Retrial on Conspiracy Convictions

McGlotten argues that the prosecution failed to produce sufficient evidence to support his convictions for conspiracy to commit first degree murder. If this argument were valid, McGlotten would be insulated from retrial on two charges. But the argument fails.

█ When assessing the sufficiency of evidence, a reviewing court must determine whether the evidence, viewed in the light most favorable to the prosecution, is sufficient to support a rational conclusion that the defendant is guilty of the crime charged beyond a reasonable doubt. *People v. Sprouse,* 983 P.2d 771, 777 (Colo.1999). Resolution of the weight and credibility of the evidence is entrusted to the judgment of the jurors. *People v. Brassfield,* 652 P.2d 588, 592 (Colo. 1982).

█ Here, the evidence, when viewed in the light most favorable to the prosecution, indicates that (1) McGlotten and his fellow gang members held a meeting and agreed to kill S.G. in retaliation for a shooting, and (2) McGlotten thereafter tried to shoot S.G. at a convenience store. The evidence similarly supports a reasonable conclusion that (1) McGlotten and his fellow gang members agreed to kill A.B. in retaliation for an argument, and (2) McGlotten and others tried to shoot A.B. from a car. Thus, the evidence was sufficient to support a reasonable inference that McGlotten agreed to aid in the planning and commission of both crimes. *See* § 18–2–201(1), C.R.S.2006 (defining conspiracy); *People v. Robinson,* 874 P.2d 453, 463 (Colo.App.1993) ("[T]o establish a conspiracy, there need only be circumstantial evidence which indicates that the conspira-

tors, by their acts, pursued the same object, with a view toward attainment of that same object.").

Relying on § 18–2–206(2), C.R.S.2006, McGlotten also argues that he cannot be convicted of conspiring to murder A.B. after being acquitted of attempting to murder A.B. We reject this argument. The attempted murder charge was based on evidence that McGlotten and his fellow gang members shot at A.B. The conspiracy conviction was supported by additional evidence of an agreement to kill A.B. Thus, evidence of the attempted murder was not the "sole evidence" of conspiracy to commit murder within the meaning of § 18–2–206(2).

## III. Other Contentions

We address the following issues that are likely to arise in the event of a retrial.

### A. Suppression Rulings

McGlotten sought to suppress statements that he made to police officers (1) in October 1999, after he was arrested for motor vehicle theft, and (2) in March 2000, when he was questioned in jail. We conclude that some of the statements are admissible.

#### 1. October 1999 Statements

On October 26, 1999, McGlotten was twice interviewed by police. The first interview took place at the jail, after McGlotten was arrested for motor vehicle theft. The second interview took place several hours later, in an administrative building. At no time did the police advise McGlotten about his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

█ The trial court ruled that *Miranda* warnings were unnecessary because McGlotten had not been in custody during the interviews. *See People v. Minjarez,* 81 P.3d 348, 353 (Colo.2003) *(Miranda* warnings are required only if a suspect is in custody). We accord deference to the trial court's findings of historical fact and review its legal conclusion de novo. *People v. Adkins,* 113 P.3d 788, 791 (Colo.2005).

█ The trial court erred in determining that McGlotten was not in custody during the first interview. The record shows that McGlotten had been arrested, handcuffed, and transported to a secure interview room where he was questioned by police officers for approximately two hours. One officer testified that McGlotten was not free to leave. Thus, a reasonable person in McGlotten's position would have believed himself to be deprived of his freedom of action to the degree associated with a formal arrest. *See People v. Matheny*, 46 P.3d 453, 459 (Colo. 2002). This is true even though McGlotten may have been questioned about offenses other than the one for which he was arrested. *See Mathis v. United States*, 391 U.S. 1, 4–5, 88 S.Ct. 1503, 1505, 20 L.Ed.2d 381 (1968) (*Miranda* does not suggest that warnings may be curtailed "based on the reason why the person is in custody"); *People v. Lee*, 630 P.2d 583, 589 (Colo.1981) (defendant, arrested for an unrelated matter, was in custody when he made statements about a homicide).

█ The record supports the trial court's ruling that McGlotten was not in custody during the second interview. Based on the testimony of the police officers, the trial court reasonably inferred that McGlotten had been released from jail and had entered the administrative building to assist the police as a confidential informant. McGlotten was interviewed by an officer while waiting for other officers to arrange an undercover drug sale. The interviewing officer testified that McGlotten was not restrained and was free to leave at any time.

We conclude that the prosecution may offer statements from McGlotten's second interview in its case-in-chief but may not offer statements from the first interview. *See People v. Wood*, 135 P.3d 744, 749 (Colo.2006) (statements made during a custodial interview are inadmissible in the prosecution's case-in-chief unless the prosecution shows that defendant waived his *Miranda* rights).

### 2. March 2000 Statements

█ On March 20, 2000, McGlotten was again interrogated by three police officers. The interview occurred at the jail.

When McGlotten entered the interview room, he asked, "Why you fucking with me, man?" and made aggressive physical gestures. One of the officers responded by yelling and cursing at McGlotten. The officer said that McGlotten was potentially facing twenty-four additional years in prison. He told McGlotten that other individuals were "pointing their finger at [him]" and that this was McGlotten's "only opportunity" to cooperate. He then told McGlotten, "So if you're gonna do this, I need to know right now, with no promises on the table, that I get straight-up conversation."

Immediately after this exchange, McGlotten abandoned his confrontational tone. He responded to the officer's questions by saying "Yes, sir" and "No, sir." The officer advised McGlotten of his *Miranda* rights, and McGlotten signed a written waiver. The officers then questioned McGlotten for approximately four hours.

After listening to a recording of the interview, the trial court found that McGlotten was not intimidated by the officer's aggressive remarks. The court found that the officers did not physically threaten McGlotten or make false statements to him. The court further found that, after the brief period of tension, the interrogation became calm and civil. The court therefore concluded that McGlotten's will was not overborne by the police conduct and that his waiver and subsequent statements were voluntary.

We uphold the trial court's ruling. The record supports a reasonable conclusion that McGlotten's *Miranda* waiver "was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *People v. Humphrey*, 132 P.3d 352, 357 (Colo. 2006) (quoting *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986)). It similarly supports a reasonable conclusion that McGlotten spoke voluntarily and not as the result of police coercion. *See People v. Valdez*, 969 P.2d 208, 211 (Colo. 1998) (in essence, the dispositive question is whether the suspect's will has been overborne).

We therefore conclude that McGlotten's statements from the March 2000 interview are admissible.

## B. Constitutionality of COCCA

■ McGlotten contends that COCCA is unconstitutional because its definition of "enterprise" is impermissibly vague. We disagree. COCCA broadly defines the term "enterprise" as follows:

"Enterprise" means any individual, sole proprietorship, partnership, corporation, trust, or other legal entity or any chartered union, association, or group of individuals, associated in fact although not a legal entity, and shall include illicit as well as licit enterprises and governmental as well as other entities.

Section 18–17–103(2), C.R.S.2006.

This definition is similar to the one set forth in the federal Racketeer Influenced and Corrupt Organizations Act (RICO). *See* 18 U.S.C. § 1961(4) (" 'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity"); *see also People v. James*, 40 P.3d 36, 47 (Colo.App.2001) (COCCA's definition is narrower than RICO's because it states what the term "means," instead of what it merely "includes").

Because COCCA was modeled after RICO, federal cases are instructive on this issue. *New Crawford Valley, Ltd. v. Benedict*, 877 P.2d 1363, 1371 (Colo.App.1993). These cases reflect a consensus view: although "enterprise" is broadly defined in RICO, the definition is not unconstitutionally vague. *See United States v. Coonan*, 938 F.2d 1553, 1561–62 (2d Cir.1991); *United States v. Boffa*, 513 F.Supp. 444, 460–63 (D.Del.1980) (collecting cases).

We reach the same conclusion with respect to COCCA. Although COCCA's definition of "enterprise" is broad, *People v. Chaussee*, 880 P.2d 749, 754 (Colo.1994), it is not so vague that persons "of common intelligence must necessarily guess at its meaning." *See Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). McGlotten has failed to demonstrate that COCCA (1) infringes on First Amendment interests, (2) is "impermissibly vague in all of its applications," or (3) is impermissibly vague as applied to him. *See People v. Baer*,

973 P.2d 1225, 1233 (Colo.1999) (quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982)).

■ McGlotten also contends that COCCA violates equal protection because it punishes, as a class two felony, predicate acts that otherwise are proscribed only as misdemeanors or as lesser felonies. We reject this contention.

■ "Equal protection requires that statutory classifications of crimes be based on differences that are real in fact and are reasonably related to the purposes of the legislation." *People v. Weller*, 679 P.2d 1077, 1082 (Colo.1984). The COCCA statute prohibits conduct that is different from the predicate acts necessary to prove a pattern of racketeering activity. There must be at least two predicate offenses, and those offenses must have been conducted as part of an enterprise. These additional requirements are reasonably related to the legislative purpose of deterring organized crime. *See* § 18–17–102, C.R.S.2006.

## C. Jurisdiction over Juvenile Conduct

■ McGlotten was charged with conspiring to distribute a controlled substance between September 1, 1996, and November 3, 2000. Although McGlotten was a juvenile during part of that time, the district court had jurisdiction over this charge because the conspiracy allegedly was not completed until after McGlotten had become an adult. *See* § 18–2–204(1), C.R.S.2006 ("Conspiracy is a continuing course of conduct which terminates when the crime or crimes which are its object are committed or the agreement that they be committed is abandoned by the defendant and by those with whom he conspired.").

The judgment of conviction is reversed, and the case is remanded for further proceedings consistent with this opinion.

Judge TAUBMAN and Judge FURMAN concur.