The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Garry Anthony BREWSTER, Defendant–Appellant.

No. 04CA0845.

Colorado Court of Appeals, Div. III.

June 11, 2009.

Rehearing Denied Oct. 8, 2009.

John W. Suthers, Attorney General, Roger G. Billotte, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Keyonyu X. O'Connell, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge CRISWELL.*

Defendant, Garry Anthony Brewster, appeals the judgments of conviction entered upon jury verdicts finding him guilty of theft and forgery and the district court's adjudications on five habitual criminal counts. He also appeals the sentence imposed. We affirm the judgments and remand with directions to the trial court.

In 1997, defendant was charged with theft and forgery for writing checks from his former employer's checking account and, in addition, with five habitual criminal counts.

After the jury verdicts but prior to sentencing, defendant filed a series of post-trial motions requesting, among other things, a new trial. During this period between the verdicts and sentencing, (1) defendant's counsel, the public defender, was dismissed at the request of defendant, and defendant proceeded pro se; (2) the trial judge, Judge Fasing,

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2008.

recused himself on his own motion; (3) a series of seven hearings were held on defendant's numerous post-trial motions before a second judge, Judge Russell, between December 1999 and March 2001; (4) in February 2001, defendant was released on bail and later failed to appear at a September 2001 hearing; (5) the court issued an arrest warrant; (6) defendant was arrested, convicted, and sentenced in another criminal case in Ohio sometime between then and May 2003; and (7) in May 2003, defendant was returned to Colorado and appeared before a third judge, Judge Macrum, who proceeded with sentencing.

In July 2003, Judge Macrum adjudicated defendant a habitual criminal on all five counts. Following a proportionality hearing, Judge Macrum sentenced defendant to twenty-four years in the custody of the Department of Corrections in addition to a six-month sentence for contempt of court, to be served consecutively.

## I. Transcript Issues

We first conclude that defendant has not been deprived of his due process right to a meaningful and speedy appeal.

### A. Chronology

On May 14, 1999, defendant appeared before Judge Fasing at a motions hearing on his pending pro se motions. The court reporter in that proceeding later became unavailable.

Defendant was not sentenced until April 19, 2004; he filed his notice of appeal on April 28, 2004, and the appellate record was filed on October 26, 2005. At that time, defendant observed that the record was missing the transcript from the May 14 motions hearing. The transcript was important because it was of the proceeding at which defendant would have been advised of his Sixth Amendment right to counsel. After some investigation, the managing court reporter for the district court advised defendant that the stenographer's notes of the May 14 hearing were unreadable and that the minute order from that hearing could not be located.

Because of the missing transcript, in July 2006, defendant moved to vacate his judgment of conviction. A division of this court denied that motion and remanded the case to the district court for the limited purpose of settling or reconstructing the record pursuant to C.A.R. 10(c) and (e).

The reconstruction hearing was held in April 2007 and centered on the issue whether defendant had been given a sufficient advisement under *People v. Arguello*, 772 P.2d 87, 93 (Colo.1989), such that he had knowingly and intelligently waived his right to be represented by counsel. Defendant's former attorney (alternate defense counsel), the prosecutor, and Judge Fasing all testified at this hearing.

Defense counsel testified that he could not remember what the hearing was about, did not remember specifically any events of the hearing, but did remember that at some point his representation of defendant ended. The prosecutor, relying on her notes, testified that "she was not hesitant to say that [the hearing judge] gave a full *Arguello* advisement," because it had been her experience that the judge always gave such an advisement, but her notes did not specifically reflect the advisement, only that defense counsel was permitted to withdraw. Finally, the hearing judge testified that, while he did not recall the events of May 14, it was his routine, "without exception," to use his bench book to advise defendants pursuant to *Arguello*. Defendant did not testify at the reconstruction hearing, but submitted an affidavit stating that there was "no self-representation warning or inquiry other than did [he] wish to represent [himself]," and the hearing judge "made it clear that [he] would not be provided any other counsel, or advisor, at all."

At the end of the testimony, the trial court made findings as to what occurred at the pertinent hearing and concluded, based on the totality of the circumstances presented in the record and the evidence received at the reconstruction hearing, that defendant had made a voluntary, knowing, and intelligent waiver of his right to counsel.

## B. Meaningful Appeal

Defendant first contends that the transcript of the missing hearing was not adequately remedied by the reconstruction hearing. As a result, he argues, we cannot meaningfully review the record to determine whether he made a valid waiver of his right to counsel. However, we conclude that the court's findings based on the reconstruction hearing, together with the record as a whole, are sufficiently reliable to permit us to conduct an intelligent review of defendant's substantive contention.

A defendant's waiver of his right to counsel must be voluntary, knowing, and intelligent based on the circumstances of each case. *People v. Smith*, 77 P.3d 751, 757 (Colo.App.2003). "A trial court's determination that a defendant waived the constitutional right to counsel will be upheld if the record affirmatively establishes that the defendant knowingly and intelligently waived that right." *Arguello*, 772 P.2d at 93. The burden is on the prosecution to establish a valid waiver. *Smith*, 77 P.3d at 757.

A waiver may be express or implied from the facts of the case. *Arguello*, 772 P.2d at 93. An implied waiver of counsel is more accurately described as a forfeiture of the right, rather than a deliberate and informed decision to waive the right, and at a minimum, requires the court to probe the defendant's awareness of the right to counsel and his understanding of the many risks of self-representation. *Id.* at 93–95.

To determine the validity of a waiver, we examine the advisement given to a defendant and the totality of the circumstances presented by the record as a whole. *Id.*; *Smith*, 77 P.3d at 757. The record as a whole must show that "the defendant knowingly and willingly undertook a course of conduct that demonstrates an unequivocal intent to relinquish or abandon his or her right to representation." *People v. Alengi*, 148 P.3d 154, 159 (Colo.2006).

However, the loss of a portion of the record does not automatically require reversal. *People v. Jackson*, 98 P.3d 940, 942 (Colo.App.2004). To obtain relief on a due process claim arising from an incomplete record, a defendant must "*always* demonstrate specific prejudice resulting from the state of that record." *People v. Whittiker*, 181 P.3d 264, 269 (Colo.App.2006) (quoting *People v. Rodriguez*, 914 P.2d 230, 301 (Colo.1996)) (emphasis in original); *Jackson*, 98 P.3d at 942.

In cases in which testimony is in dispute and the exact language used is crucial, reconstruction may not be an appropriate remedy for the missing transcript. *Jackson*, 98 P.3d at 942; *see People v. Killpack*, 793 P.2d 642, 643 (Colo.App.1990) ("When [crucial testimony] is in dispute and precise language used is critical, reconstruction is not an appropriate remedy for the missing transcript."). However, if the record as a whole supports the trial court's reconstruction, there is no reversible error. *Jackson*, 98 P.3d at 943; *see also People v. Anderson*, 837 P.2d 293, 300 (Colo.App.1992) (reversal of conviction was not required where appellate court was able fairly to review the defendant's contentions despite missing portions of the transcript).

Here, we agree with defendant that a reconstruction hearing is not the same as having a transcript to review. However, the question is whether the reconstructed record is sufficient to allow adequate review of defendant's substantive contentions. Here, defendant was able to produce witnesses at the reconstruction hearing, provide the court with an affidavit of his recollection of the hearing, and submit his own version of what the findings should reflect to the trial court. Furthermore, defendant has failed to establish any specific prejudice flowing from this hearing other than the mere fact that he cannot review the actual transcript. Because defendant argues only that the advisement was never given and not that the exact language of the advisement was defective, we conclude that the reconstruction hearing and the court's resulting findings are an appropriate remedy for the missing transcript. *Cf. Jackson*, 98 P.3d at 942.

Our conclusion is further bolstered by the fact that, upon a review of the record as a whole, we have determined that it is sufficient to establish that defendant impli-

edly waived his right to counsel. Specifically, defendant stated in a March 1999 motion that (1) he had a basic knowledge of the judicial system, legal terms, and courtroom procedure; (2) he had represented himself in a related case; and (3) he had made a "knowing and voluntary choice." *Cf. People v. McGlotten*, 166 P.3d 182, 187 (Colo.App.2007) (review impossible where record in its entirety could not provide an adequate basis from which to review the defendant's contention).

Therefore, we perceive no reversible error because the record as a whole supports the trial court's determination that defendant had knowingly and intelligently waived his right to counsel.

### C. Speedy Appeal

We conclude that defendant has also not been deprived of his right to a speedy appeal.

 Excessive delay in the resolution of an appeal can give rise to a cognizable due process claim. *People v. Rios*, 43 P.3d 726, 732 (Colo.App.2001). To evaluate the due process implications of appellate delay, we must consider (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right to appeal; and (4) any prejudice to the defendant resulting from the delay. *Id.* (adopting the test articulated for speedy trial violations in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)); *see also McGlotten*, 166 P.3d at 185; *Whittiker*, 181 P.3d at 270.

The People do not dispute that defendant has made a threshold showing of inordinate delay or that he timely asserted his right to appeal. Rather, the People argue that defendant is partially responsible for the delay, and defendant has suffered no prejudice from that delay.

 Because we agree with the People that defendant has not suffered any prejudice from the delay, we need not address the People's argument that he is partially at fault.

Prejudice is an essential element of a due process claim of appellate delay; no relief will be granted if a defendant cannot demonstrate prejudice. *Whittiker*, 181 P.3d at 271. The prejudice determination depends on the procedural context of the defendant's claim; if the defendant asserts appellate delay on direct appeal, the crucial inquiry is whether the delay has impaired the defendant's ability to prosecute the appeal. *Id.; McGlotten*, 166 P.3d at 185. A defendant's ability to prosecute an appeal is impaired where the defendant is unable to present, or an appellate court is unable to review and resolve, the defendant's substantive contentions on the existing record, or where the defendant can show that "a prompt resolution of his appeal would have yielded a different outcome." *Whittiker*, 181 P.3d at 271; *see also People v. Carmichael*, 179 P.3d 47, 57 (Colo.App.2007), *rev'd on other grounds*, 206 P.3d 800 (Colo. 2009); *McGlotten*, 166 P.3d at 187.

We first observe that the delay here from October 6, 2005 to the present is over three years. Defendant has not argued, nor would the record support, the contention that a prompt resolution of this appeal would have in some fashion yielded a different outcome. He has failed to make any showing of specific prejudice, other than the mere fact that it took some time and was a stressful process. And, for the reasons outlined above, we conclude that the delay did not impede our ability to review his various contentions.

### II. Speedy Trial

Defendant next contends that the trial court violated his statutory and constitutional right to a speedy trial by denying his motion to dismiss based on an implied waiver of speedy trial. We disagree.

### A. Factual Background

Defendant entered his not guilty plea on March 26, 1998. Thus, the statutory speedy trial deadline was September 25, and trial was originally set for September 14. On June 10, the People filed a motion to add five habitual criminal counts, and the trial court appointed conflict-free counsel to challenge the legality of those prior convictions.

At a subsequent hearing on July 17, defendant moved to dismiss his public defender on grounds that there was a conflict of interest and that she was ineffective. At that time, he indicated that he was willing to waive his

right to a speedy trial in order to resolve the conflict of interest issue. Because defendant's public defender was hospitalized and could not attend that hearing, the matter was set over for another hearing on July 31. At that hearing, the matter was once again set over to August 3 to permit the parties to conduct further research. At the August 3 hearing, defendant's public defender told the trial court that the public defender's office did not have a conflict, but asked to withdraw as counsel because she could no longer effectively represent defendant. The trial court found that there was a complete breakdown of communication between defendant and his public defender, allowed counsel to withdraw, and appointed alternate defense counsel to represent defendant. On August 12, defendant's new counsel requested a continuance of the September 14 trial date on the ground that he would be unable to effectively prepare by that date, but told the court that defendant did not wish to waive his speedy trial deadline. The trial court again set the hearing over because it wanted to review the prior hearings to determine if any delays were attributable to defendant.

On August 14, alternate defense counsel told the court that, after reviewing discovery, he could not effectively represent defendant at trial on September 14. He also argued that had defendant's motion for new counsel been timely resolved when it was filed in April, instead of at the end of July, the trial could have proceeded as scheduled.

The trial court disagreed and found an implied waiver of defendant's speedy trial pursuant to section 18-1-405(6)(f), C.R.S. 2008, based on the fact that the delay was attributable to the breakdown of communication between defendant and his public defender.

In doing so, it specifically found that (1) after the public defender withdrew, new counsel needed to be appointed; (2) after new counsel was appointed, he informed the court that he would need at least sixty days to be effectively prepared and he would not be prepared by the September 14 trial date; (3) defendant wanted new counsel, but wanted to be tried within the speedy trial deadline; and (4) to receive the effective as-

sistance of counsel, a continuance was necessary to allow counsel to investigate and prepare the matter.

Defendant filed a motion to dismiss on grounds of violation of statutory and constitutional speedy trial rights on August 24. Based on its previous findings, the court denied the motion without a hearing.

### B. Statutory Violation

■ As a general rule, a defendant must be brought to trial within six months after arraignment. § 18-1-405(1), C.R.S. 2008. However, any period of delay "caused at the insistence of the defendant" shall be excluded from the six-month speedy trial period. § 18-1-405(6)(f). Any express consent to the delay or other affirmative conduct by the defendant is treated as a waiver of the right to speedy trial. *People ex rel. Gallagher v. Dist. Court*, 933 P.2d 583, 588 (Colo. 1997). Waiver can be explicit or "inferred from the behavior of the defendant." *Id.*

■ A continuance made necessary because of the substitution of counsel may, depending upon the particular circumstances of the case, be chargeable to the defendant. *People v. Scales*, 763 P.2d 1045, 1047 (Colo. 1988). To be chargeable to the defendant, the continuance must have been caused by an affirmative act of the defendant, the defendant's express consent, or some other affirmative action evincing consent. *Id.* at 1047–48; *People v. Yascavage*, 80 P.3d 899, 903 (Colo.App.2003), *aff'd*, 101 P.3d 1090 (Colo. 2004). The determination whether a delay caused by substitution of counsel is properly chargeable to the defendant is essentially an ad hoc inquiry. *Scales*, 763 P.2d at 1047.

■ The decision to grant a continuance is a matter within the sound discretion of the trial court, and its decision will not be overturned absent an abuse of that discretion. *Yascavage*, 80 P.3d at 903. A trial court abuses its discretion when it acts in a manifestly arbitrary, unfair, or unreasonable manner. *People v. Villano*, 181 P.3d 1225, 1228 (Colo.App.2008).

■ Here, we perceive no abuse of discretion in the trial court's determination that

the delay was attributable to defendant. Our review of the record reflects that at the August 3 hearing, defendant voiced a number of complaints about his public defender and wished to receive new counsel. The public defender responded by making a record that defendant had "created a conflict of interest between [them]" and it was impossible for her to effectively represent him. As a result, the trial court found that there was a complete breakdown of communication between defendant and the public defender. The trial court determined defendant could not proceed without counsel under the circumstances and substituted counsel.

As a result of that substitution, counsel needed additional time to adequately prepare for trial. Because sufficient time for trial preparation is necessarily a requirement for the effective assistance of counsel, and the substitution was made at the instance of defendant, continuing the trial date outside of the speedy trial deadline was not a violation of his statutory right to speedy trial. *See Scales,* 763 P.2d at 1048.

### C. Constitutional Violation

In the alternative, defendant argues that his constitutional right to speedy trial was violated. We are not persuaded.

■ In determining whether a defendant's constitutional right to speedy trial has been violated, we must balance (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted the right to speedy trial, and (4) any prejudice to the defendant caused by the delay. *People v. Fennell,* 32 P.3d 1092, 1095 (Colo.App.2000). The defendant carries the burden to establish the violation. *Id.*

■ The supreme court has found a nexus between the injury resulting from the violation of the right to a speedy trial and the interests protected by that right. The right to a speedy trial serves, among other things, to limit the possibility that the defense will be impaired. *Moody v. Corsentino,* 843 P.2d 1355, 1367 (Colo.1993) (citing *Barker,* 407 U.S. at 532, 92 S.Ct. 2182).

■ Here, the total length of time between defendant's arraignment and his trial was roughly seven and one-half months, as defendant was brought to trial on October 30, forty-six days after his statutory speedy trial deadline. Because, as we have concluded above, the reason for the delay was attributable to defendant's concerns about his representation by the public defender, and the court's subsequent accommodation of such concerns was made, in part, to protect defendant's right to adequate representation, we conclude that any prejudice defendant suffered by the forty-six-day extension was outweighed by trial court's concerns for adequate representation. We therefore perceive no error.

### III. Failure to Appear at Post-Trial Motions Hearing

■ Defendant also contends that the trial court erred when it found that he had waived the right to pursue his post-trial motions because he failed to appear at the hearing set on those motions. We disagree.

Defendant initially filed over fifty motions, including motions to amend his motion for a new trial, requesting transcripts, and seeking funds for an investigator, beginning in March 1999. As a result, numerous hearings were held to determine how to proceed on the post-trial claims.

During one of those hearings, Judge Russell set defendant's bail at $10,000, defendant was released on bond, and the motions hearing was continued. On September 10, defendant failed to appear for this hearing, and the court issued a bench warrant.

During this interim period, defendant was convicted and sentenced in a criminal case in Ohio. He was later returned to Colorado pursuant to the Interstate Agreement on Detainers and appeared before Judge Macrum in May 2003.

The prosecution asserted that, based on a warning Judge Russell had given defendant when he granted him bond, defendant had waived his post-trial motions by failing to appear for the September 10, 2001 hearing. The prosecution also asserted that defendant's voluntary absence was an effective waiver of his post-trial motions. Defendant argued that there was nothing in the record

to support that claim. Although the court was unable to locate the previous minute order, it adopted the transcript as that order and held that, by failing to appear, defendant had waived his right to pursue his post-trial motions. The People argue, and we agree, that this situation is analogous to the situation presented when a defendant escapes from state custody while his appeal is pending.

█ "It has been settled for well over a century that an appellate court may dismiss the appeal of a defendant who is a fugitive from justice during the pendency of his appeal." *Ortega–Rodriguez v. United States,* 507 U.S. 234, 239, 113 S.Ct. 1199, 122 L.Ed.2d 581 (1993).

This rule was developed, in part, because of (1) a concern that there could be no assurance that any judgment the court issued in the defendant's absence would prove enforceable; (2) a "disentitlement theory" that construes a defendant's flight during his appeal as tantamount to a waiver or abandonment of the appeal; (3) a desire to deter such conduct; and (4) an interest in advancing efficient, dignified appellate practice. *Ortega–Rodriguez,* 507 U.S. at 240–41, 113 S.Ct. 1199; *see also Estelle v. Dorrough,* 420 U.S. 534, 538, 95 S.Ct. 1173, 43 L.Ed.2d 377 (1975) (determining that the rule discourages escapes and promotes the "efficient, dignified operation" of the court); *Eisler v. United States,* 338 U.S. 189, 190, 69 S.Ct. 1453, 93 L.Ed. 1897 (1949) (enforceability concerns).

This rule has been adopted in Colorado, *see People v. Anderson,* 39 Colo.App. 497, 497–98, 566 P.2d 1369, 1369 (1977), and has been extended to circumstances in which a defendant voluntarily fails to appear for pre-trial motions. *See People v. Ulibarri,* 671 P.2d 1325, 1326 (Colo.App.1983) (when defendant voluntarily left a suppression hearing before it was concluded, he impliedly waived the issues raised in the motion to suppress); *but see People v. Dashner,* 77 P.3d 787, 791–92 (Colo.App.2003) (declining to extend the rule where there was no evidence that the defendant's absence was voluntary, but also concluding that defendant's testimony was not critical to the hearing), *overruled on*

*other grounds by Domingo–Gomez v. People,* 125 P.3d 1043, 1051 n. 3 (Colo.2005).

The situation of the trial court in the hearing of a motion for new trial is the same as that of an appellate court on the hearing of an appeal where defendant has escaped and is a fugitive from justice. *See Bradford v. State,* 184 Tenn. 694, 202 S.W.2d 647, 648 (1947). We therefore conclude that the rule adopted in *Anderson* should also be applied when a defendant voluntarily fails to appear for a hearing on post-trial motions. *Id.* ("[A] trial court should not be required to give its time to proceedings which, for their effectiveness, must depend upon the consent of the defendant."). Any ruling on defendant's post-trial motions would have been unenforceable in his absence from Colorado (as defendant had not yet been sentenced). Further, where, as here, a defendant is appearing pro se, his flight from the jurisdiction indicates a desire no longer to participate in the trial or appellate process.

This application is consistent with that of other jurisdictions. *See Blaylock v. State,* 129 Ga.App. 230, 199 S.E.2d 369, 369 (1973) (when the defendant timely filed motion for new trial, but escaped from custody, he waived and forfeited all right to invoke the aid of the court and rejection of motion was proper); *Bradford,* 202 S.W.2d at 648 (defendant waived right to have his motion for a new trial considered and determined when he became a fugitive from justice); *see also Commonwealth v. Deemer,* 550 Pa. 290, 705 A.2d 827, 829 (1997) (concluding that rejection of post-trial motions appropriate where the defendant had escaped and had not returned within the time allowed for post-trial motions, but declining to extend the rule to prevent the defendant from pursuing appeal); *Lewis v. State,* 268 Ind. 398, 375 N.E.2d 1102, 1103–04 (1978) (the defendant was not entitled to have motion for new trial ruled upon while he was a fugitive, but was denied appellate relief only because it would have been untimely).

Defendant nevertheless argues that, because the trial court did not make any findings regarding the voluntariness of his absence from the September 10 hearing, this somehow requires a remand to the trial court

to litigate his post-trial motions. However, defendant did not make a showing in the trial court that his absence, while he was apparently arrested and detained in Ohio, was anything other than voluntary, and we therefore reject his argument.

To the extent that defendant argues that the record does not support a claim that he was advised he would waive his motions by failing to appear, we need not address that argument, because we conclude that his action in becoming a "fugitive" is itself sufficient to waive his motions.

### IV. Judges' Recusals

Defendant next contends that the case must be remanded because (1) the sentence was imposed by a judge who had not presided at his trial and (2) his post-trial motions were rejected by a judge who had not heard the relevant evidence necessary to rule on the motions. We conclude that this matter requires further consideration by the trial court.

### A. Sentencing

■ While there is no constitutional right to be sentenced by the same judge who presided over the trial, *People v. Koehler,* 30 P.3d 694, 696 (Colo.App.2000), divisions of this court have determined that the better practice is for the judge who presided over a criminal trial also to impose the sentence. *Id.*

Likewise, on several occasions, the Colorado courts have observed that, absent a proper reason for recusal, a judge has an obligation to serve on a case assigned to him. *See Kubat v. Kubat,* 124 Colo. 491, 494, 238 P.2d 897, 899 (1951); *see also People v. Little,* 813 P.2d 816, 818 (Colo.App.1991); *Blades v. DaFoe,* 666 P.2d 1126, 1128 (Colo. App.1983), *rev'd on other grounds,* 704 P.2d 317 (Colo.1985).

We acknowledge that in *Aaberg v. District Court,* 136 Colo. 525, 319 P.2d 491 (1957), our supreme court held that, when presented with a motion to disqualify, a judge has three options: (1) deny the motion; (2) grant the motion; or (3) "elect[ ] to step aside sua sponte." 136 Colo. at 527, 319 P.2d at 493.

However, that case is distinguishable. In *Aaberg,* the court actually addressed whether, once a judge elects the third option, he or she may appoint his or her own successor to the case. It did not address the propriety of the recusal itself.

■ Substitution of a judge in a criminal case is controlled by Crim. P. 25, which provides that a judge may be substituted after a jury trial "[i]f by reason of absence from the district, death, sickness, or other disability, the judge before whom the defendant was tried is unable to perform the duties to be performed by the court." To that end, a division of this court held in *Little* that a substitution of judges is permitted so long as a justifiable reason is shown, that is, there exists one of the grounds listed in Rule 25. 813 P.2d at 818.

Furthermore, to the extent that the People rely upon Colorado Code of Judicial Conduct Canon 3(C)(1) and Crim. P. 21(b)(2), their argument is unpersuasive. Canon 3(C)(1) provides only that a judge should disqualify himself or herself in a proceeding in which his or her impartiality might be questioned, and Crim. P. 21(b)(2) requires a judge to disqualify himself or herself on his or her own motion when the judge "knows of circumstances which disqualify." *See* § 16–6–201(1)–(2), C.R.S.2008 (grounds and procedure for disqualification). Neither rule addresses the circumstance where the judge gives no reason for the recusal. However, we conclude that a remand of this case is necessary to allow Judge Fasing to state the reasons for his recusal.

### B. Post–Trial Motions

Defendant argues that we should also apply the principles embodied in Crim. P. 25 to his post-trial motions and remand that part of the case to Judge Russell for further explanation of his recusal.

However, Crim. P. 25 has been held not to apply to post-trial proceedings. *See People v. Holwuttle,* 155 P.3d 447, 451 (Colo.App. 2006) (not applicable to resentencing proceedings); *People v. Banuelos–Landa,* 109 P.3d 1039, 1041 (Colo.App.2004) (not applicable to hearings on Crim. P. 35 motions);

*People v. Rivera–Bottzeck,* 119 P.3d 546, 549 (Colo.App.2004) (not applicable to probation revocation proceedings); *Koehler,* 30 P.3d at 697 (because motions hearings are "narrowly focused on the legal and factual disputes germane to the motion, while a trial is broad in scope and addresses the charges on their merits," rule does not apply to sentencing proceedings where there is no preceding trial).

■ We therefore conclude that, like the other post-trial proceedings to which it has not been applied, Crim. P. 25's requirement that the same judge impose the sentence after a trial, absent an exception, does not apply to the circumstances here.

### V. Remaining Contentions

In light of our resolution of the issue of the trial judge's recusal, we need not address defendant's remaining contentions, because they all relate to the propriety of his sentence.

Defendant's judgments of conviction are affirmed. The case is remanded to the trial court for the judge who tried this case to explain on the record why he recused himself before sentencing. If that explanation comports with any of the reasons set forth in Crim. P. 25, the sentence previously imposed shall stand affirmed, subject to defendant's right to re-initiate his appeal of that sentence. If the reasons given by the judge are not based on any of the grounds for recusal set forth in the rule, defendant's sentence shall be vacated, and the judge who sat on defendant's jury trial shall resentence him.

Judge ROMÁN and Judge PLANK concur.