The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Todd K. ROBINSON, Defendant–Appellant.

No. 91CA0763.

Colorado Court of Appeals, Div. V.

Dec. 9, 1993.

Rehearing Denied Jan. 13, 1994.

Certiorari Denied June 6, 1994.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Jonathan A. Abbott, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Thomas R. Williamson, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge MARQUEZ.

Defendant, Todd K. Robinson, appeals the judgment of conviction entered on a jury verdict finding him guilty of one count of first degree murder, one count of conspiracy to commit first degree murder, and one count of child abuse resulting in death. He also challenges the sentence imposed. We affirm both the judgment and the sentence.

This case concerns the death of the daughter of defendant's wife. Evidence presented at trial indicated that although the child, age 5½, had suffered from several months of abuse and neglect, she died on August 3, 1989, as a result of a blow or blows to her head.

At trial, there was abundant evidence of abuse by both defendant and his wife. Defendant's defense was that his wife had killed the child without his aid, agreement, or intention.

## I.

Defendant first argues that the trial court's denial of his challenge for cause of a prospective juror deprived him of his constitutional right to a fair and impartial jury. We perceive no error.

■ The test to be applied in determining whether a prospective juror should be dismissed for cause is whether that person would render a fair and impartial verdict based on the evidence presented at trial and the instructions given by the court. *People v. Drake,* 748 P.2d 1237 (Colo.1988).

■ On review, a decision denying a challenge for cause will be set aside only if the record discloses a clear abuse of discretion by the trial court. *People v. Drake, supra; see also People v. Taggart,* 621 P.2d 1375 (Colo.1981) (a child abuse case in which the standard of review was termed "manifest abuse of discretion").

■ Because the prospective juror had nine young grandchildren, she initially expressed doubt as to whether she could be a fair and impartial juror. However, she repeatedly stated that she wanted to be fair and wanted to hear the whole story before reaching a conclusion on defendant's guilt or innocence. She also stated that she could give defendant a fair trial and could vote not guilty even if she were the only one voting that way. She concluded with the words: "I would still want to be fair. There's still emotion, but I want to be fair. And I want to hear the whole story."

■ It is the trial court's prerogative to give considerable weight to a potential juror's statement that she could fairly and impartially serve on the case. *People v. Drake, supra.* And, after reviewing the entire voir dire, we can find no abuse of discretion in the decision to deny the challenge for cause. *Compare People v. Taggart, supra, with People v. Zurenko,* 833 P.2d 794 (Colo. App.1991).

## II.

Defendant next argues that, because the trial court made an evidentiary ruling in front of the jury, and because the trial court showed its personal sympathy and bias toward two child witnesses, he was deprived of his fundamental right to a fair trial before an impartial tribunal. We disagree.

### A.

Defendant argues that the trial court's statement in front of the jury requires reversal. We disagree.

■ During the testimony of one of the state's witnesses, defense counsel objected to hearsay statements of defendant's wife concerning what defendant had done. The trial court asked if the testimony was being offered as an exception to the hearsay rule. The prosecutor stated: "Based upon the conspiracy between the two of them during this period of time." After this the court overruled the objection.

Defense counsel then asked for a hearing stating: "As the Court well knows, you can't enter any types of alleged conspiracy statements until there's been a conspiracy established by matter of law, and there needs to be a hearing on that."

The following exchange then took place:

[Prosecutor]: Well, I would agree with that, but I think I have already had evidence as to a conspiracy established already through the children and through—

THE COURT: The Court finds there is sufficient evidence presented thus far to satisfy that requirement of the law.

Defense counsel then requested a cautionary instruction. After a brief discussion, the judge and counsel had a hearing outside of the presence of the jury. Defense counsel presented the requested instruction and also requested a mistrial based on the court's finding before the jury that the prosecution had already established that a conspiracy existed.

After reviewing the transcript, the court denied the motion for a mistrial. Because of defense counsel's statements concerning a conspiracy, the court reasoned that it would be obvious the finding had been made if the testimony was allowed to come in.

Defendant contends that the trial court's ruling in front of the jury was particularly prejudicial in this case. Defendant argues that the court's ruling on the conspiracy issue implied that he was guilty of murder as a complicitor and guilty of conspiracy to commit murder.

■ To determine whether a statement is admissible under the co-conspirator exception, a trial court must find by a preponderance of the evidence that a conspiracy exists.

*People v. Montoya,* 753 P.2d 729 (Colo.1988). This is a ruling reserved for the trial court under CRE 104(a) and should ordinarily be made outside the presence of the jury.

We agree that the trial court should have made its ruling outside the presence of the jury and that the charges in this case may have compounded any error. However, for several reasons, we conclude that this error does not require reversal.

■ Under the harmless error rule, an error in a criminal trial will be disregarded if there is not a reasonable possibility that the error contributed to the defendant's conviction. *See* Crim.P. 52(a). The proper inquiry in determining a harmless error question is whether the error substantially influenced the verdict or affected the fairness of the trial proceedings. *People v. Fuller,* 788 P.2d 741 (Colo.1990).

We find the error here to be harmless, first, because defendant initiated the open discussion before the jury by questioning whether "there's been a conspiracy established by matter of law." Second, reversal is not required because the trial court gave a lengthy curative instruction at defendant's request. That instruction stated:

Ladies and Gentlemen, there are two matters which I want to advise you of.

First of all, any rulings I make on the law are matters solely on issues of law and have nothing at all to do with the facts of this case. You are the sole determin[ers] of the facts. That is not a responsibility of the Court but is the responsibility of the jury. It's the Court's responsibility to make particular rulings on law which deal with admissibility of evidence.

In addition thereto, I would like to read you this instruction. 'Hearsay statements of an alleged accomplice must always be examined and weighed by the jury with great[er] care and caution than the statement[s] of ordinary witnesses. You must decide whether the hearsay statements have been affected by the accomplice's interest in the outcome of the case or by the prejudice against the defendant or by their interest in lessening their culpability by spreading the blame for their actions by

including others. You should keep in mind that such testimony is always to be received with caution and weighed with great care.'

The court repeated this latter instruction prior to submitting the case to the jury.

Finally, whether a conspiracy actually existed was a question of fact for the jury, *People v. Montoya, supra,* and the jury was so instructed here. The jury was also given a separate complicitor instruction, and therefore, we presume that it did not confuse complicity with conspiracy. Thus, we conclude that any error of the court was harmless. *See People v. Hodges,* 624 P.2d 1308 (Colo.1981).

### B.

The second part of defendant's fair trial argument is that the trial court committed reversible error by demonstrating a personal bias and sympathy for two child witnesses. We disagree.

■■■ A criminal defendant has a due process right to a fair trial before an impartial trial judge and an impartial jury. *See Johnson v. Mississippi,* 403 U.S. 212, 91 S.Ct. 1778, 29 L.Ed.2d 423 (1971); *People v. Drake, supra.* Accordingly, a trial court may not express to a jury any personal opinion of the credibility of a witness and, indeed, should scrupulously avoid even the appearance of partiality. *People v. Rogers,* 800 P.2d 1327 (Colo.App.1990).

■■■ Here, the victim's 8–year–old brother and 9–year–old sister both testified for the prosecution. When the sister was leaving the stand, the court said, "Okay, thank you. Bye-bye, Honey. Here's something for you." During a recess between the testimony of the two children, the following exchange took place:

[Defense Counsel]: Judge, before we bring in the jury, we would like to make a record that after the last child witness testified that you had your reporter hand her some candy, and we feel it's inappropriate to do that in front of the jury, as it looks like it's a reward for them testifying in the prosecution's case.

We would ask that you would not do it with this witness in front of the jury. I don't have any problem afterwards.

[The Court]: I am going to do it, whether it be in front of the jury or whether it not be in front of the jury. I will do it. Bring in the jury please.

Although the brother testified next, the record does not indicate whether the brother was given anything when he finished testifying. The record contains only the following brief exchange:

[Defense Counsel]: Nothing further, judge.

[The Court]: [Bailiff] will you approach the bench, please?

(Brief pause.)

[The Court]: You can go. Thanks.

In cases in which reversal has been required because of a court's actions towards a child witness, the child's testimony had very little support from other witnesses and no corroborating physical evidence. *See State v. Cook,* 485 So.2d 606 (La.App.1986) (rewarding child victim with candy in presence of jury after conclusion of testimony was reversible error); *State v. Suttles,* 767 S.W.2d 403 (Tenn.1989) (a trial court's actions towards a child victim may constitute an improper comment on the child's credibility). That is not the case here.

Although we do not condone the trial court's conduct, we conclude that that conduct did not rise to the level of a "very open and dramatic act" which requires reversal of defendant's conviction. *See People v. Rogers, supra,* 800 P.2d at 1328–29 (trial court erred in personally escorting a child victim to and from the witness stand).

### III.

Defendant next argues that the trial court erred by admitting hearsay statements of his wife in violation of the Colorado Rules of Evidence and his constitutional right to confront witnesses. We find no reversible error.

■■■ Out-of-court statements by a co-conspirator of a party during the course of and in furtherance of the conspiracy are admissible under CRE 801(d)(2)(E). *Williams*

v. People, 724 P.2d 1279 (Colo.1986). Moreover, because this rule is a firmly rooted exception to the hearsay rule, the admission of such statements does not constitute a violation of a defendant's right of confrontation. *Bourjaily v. United States,* 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987).

For out-of-court statements to be admissible under this hearsay exception, the People must first prove the existence of a conspiracy. Generally, proof of a conspiracy is circumstantial and can be inferred from the acts of the parties. *Smaldone v. People,* 103 Colo. 498, 88 P.2d 103 (1938).

Here, there was ample testimony from the victim's sister and brother that defendant and his wife abused the victim by hitting her, tying her in a closet, and depriving her of food. The sister also testified that the child was hung in the parents' closet and was hanging in that closet the day she died.

Defendant also admitted that he and his wife both disciplined the victim. He specifically admitted spanking and whipping the victim with a belt and that on two occasions he tied a bathrobe tie around the victim's neck and left her in a closet for two to several hours.

Testimony by the coroner who conducted the autopsy, as well as photographs of the victim's body, indicated extensive scarring and bruises over the child's entire body. Moreover, both defendant and his wife were at the house during the time frame when the victim received the fatal blows.

This evidence is sufficient to establish that a conspiracy existed and that defendant was a participant.

Second, and most important in this case, the prosecution must prove that the statements were made "during the course of and in the furtherance of the conspiracy." CRE 801(d)(2)(E). Defendant argues that neither statements made prior to the victim's death nor those after the victim's death meet this requirement. We agree in part, but conclude that any error in this regard was harmless.

A.

First, as to certain statements made by defendant's wife to a neighbor prior to the victim's death, we conclude that although they were not in furtherance of the conspiracy, their admission was harmless beyond a reasonable doubt.

Defendant cites the following statements made by his wife to a certain neighbor as inadmissible hearsay:

1. [The wife] told [a neighbor] that both she and her husband would hang [the victim] in a closet for stealing food.

2. [The wife] told [a neighbor] that once they didn't feed [the victim], and that they fed the girl jalapeno peppers and salsa on bread as punishment for stealing food.

3. [The wife] told [a neighbor] that defendant had once put [the victim] under a cold shower as punishment and that *both* parents would force the girl to stand in a corner as punishment.

4. [The wife] told [the neighbor] that [defendant] would hit [the victim].

Although defendant objected to these statements as hearsay, the trial court allowed the statements in under the co-conspirator's exception.

Statements which constitute casual comments or idle conversation, not intended to further the purpose and objectives of the conspiracy, are not admissible under the co-conspirator exception. *See United States v. Bibbero,* 749 F.2d 581 (9th Cir.1984), *cert. denied,* 471 U.S. 1103, 105 S.Ct. 2330, 85 L.Ed.2d 847 (1985); *United States v. Lieberman,* 637 F.2d 95 (2d Cir.1980); *United States v. Castillo,* 615 F.2d 878 (9th Cir. 1980). That is the case here, and thus, defendant's confrontation clause rights were violated.

However, constitutional error does not require reversal if the reviewing court is convinced that the error was harmless beyond a reasonable doubt. *Merritt v. People,* 842 P.2d 162 (Colo.1992); *Topping v. People,* 793 P.2d 1168 (Colo.1990).

As to the first statement, the victim's sister also testified to hanging in the closet, and both the brother and sister testified the vic-

tim was tied in a closet. Defendant as well admitted tying the victim in a closet on at least two occasions. Further, a number of witnesses, including the brother and sister, testified that the victim was not fed well. Other witnesses, including expert witnesses, testified that the victim was grossly underweight.

A neighbor called by defendant as a witness testified on cross-examination without objection that defendant's wife told her that defendant had stripped the victim and placed her in the shower under cold water. Another witness for the state stated she observed the victim standing in a corner at a time when both defendant and his wife were at home.

Defendant himself admits spanking and whipping the victim with a belt. In addition, another witness testified that defendant struck the victim in the face during a fishing outing and then did not tend to her injury.

Accordingly, the testimony at issue was merely cumulative, and we conclude that any violation of defendant's confrontation clause rights is harmless beyond a reasonable doubt.

### B.

As to certain other statements made by defendant's wife after the victim's death, we agree that at least one was made after the conspiracy had ended, but conclude that any error in the admission of any of the statements was harmless beyond a reasonable doubt.

### 1.

One of the first firefighters who went to defendant's house on August 3, 1989, testified: "[A]s soon as I pulled up [the victim's] blouse, I asked, 'What happened?'" Defendant objected to the question on the grounds that the response would be hearsay and would not be helpful for purposes of medical treatment. The objection was overruled. The firefighter then testified that defendant's wife stated that he "would have to talk to [the victim's] father because her father is the one that disciplines her."

However, even if we assume that the statement does not fit within the medical treatment or diagnosis exception to the hearsay rule, see CRE 803(4); *People v. Oldsen,* 697 P.2d 787 (Colo.App.1984), *aff'd,* 732 P.2d 1132 (Colo.1986); *People v. Galloway,* 726 P.2d 249 (Colo.App.1986), the ample other evidence that defendant disciplined the victim makes any error harmless beyond a reasonable doubt.

### 2.

A number of other statements by defendant's wife were admitted without objection. These include the following. Defendant's wife told a detective that defendant would "discipline" the victim with his hand or belt and that he had "disciplined" the victim on a fishing trip. Later, a prosecutor elicited defendant's wife's exculpatory denial that she had not killed the victim. Last, defendant's wife told a neighbor that defendant was violent, had forced the victim's head against a door, and had placed the victim under a cold shower as punishment.

If we assume, *arguendo,* that these statements were inadmissible hearsay, then defendant's confrontation clause rights were violated. However, constitutional error does not require reversal if the reviewing court is convinced that the error was harmless beyond a reasonable doubt. *Merritt v. People, supra; People v. Newbrough,* 803 P.2d 155 (Colo.1990) (constitutional plain error).

Because many of these statements were cumulative of other testimony and because of the substantial amount of other evidence indicative of defendant's guilt, we conclude that these statements did not contribute to defendant's conviction, and thus, any error was harmless beyond a reasonable doubt. *See Merritt v. People, supra.*

### IV.

Defendant also argues that hearsay statements of the victim's brother and sister were improperly admitted. We conclude that any error was either invited by defendant or was harmless.

## A.

The first statements challenged were included in testimony by defendant's sister-in-law, who was first called as a witness by the state. Before the witness was excused, however, defendant recalled her for a direct examination.

Defense counsel questioned defendant's sister-in-law as follows:

Q. Now ... since the time that [brother and sister] had been living with you, okay, and just you—this is about this last year, okay?

A. Okay.

Q. ... did they mention anything to you about [defendant's wife] causing any injuries to [the victim]?

A. Yes, they mentioned [defendant and his wife] causing injuries to [the victim].

Q. I'm asking about [his wife].

A. [Defendant and his wife], [defendant and his wife] at the same time.

Q. Did they specifically mention anything about [defendant's wife] burning [the victim]?

A. Burning [the victim]? Not to my knowledge.

On cross-examination, the prosecutor asked the witness: "What did [the victim's sister] tell you that both parents would do," and, "[D]id they talk about both parents doing things to [the victim]?" The witness answered with incriminating hearsay statements of the brother and sister regarding both defendant and his wife. These included that defendant held the victim up by her neck and hit the victim, that they hung her in a closet, they tied her hands, and that they put a rope around her neck. Defendant did not object to these statements.

Since these questions were raised by defense counsel during his direct examination, defendant may not now complain about the consequences of his counsel's error in trial strategy. *See People v. Shackelford,* 182 Colo. 48, 511 P.2d 19 (1973). Furthermore, once a hearsay statement has been allowed into evidence, "the proponent of the statement has 'opened the door' to other statements made at the same time, under the

same circumstances, and concerning the same event." *People v. Hise,* 738 P.2d 13, 16 (Colo.App.1986). Thus, defendant cannot now raise these issues as a basis for reversal.

## B.

The remaining challenged hearsay statements were admitted during the prosecution's examination of social workers, police, and foster parents. Even if inadmissible these statements all dealt with the type of abuse already discussed, and many of them were cumulative of the children's prior testimony. Further, they were not objected to and they were presented after the victim's brother and sister had already testified and been subject to cross-examination. Hence, we conclude they were harmless beyond a reasonable doubt.

## V.

Defendant next argues that the trial court committed plain error by improperly instructing the jury on complicitor liability. We disagree.

Pursuant to statute, a person may be convicted as a complicitor if:

with the intent to promote or facilitate the commission of the offense, he aids, abets, or advises the other person in planning or committing the offense.

Section 18–1–603, C.R.S. (1986 Repl.Vol. 8B).

The pattern jury instruction for complicity, which the court followed, requires that the defendant "have had knowledge that the other person intended to commit all or part of the crime" and "intentionally aid, abet, advise, or encourage the other person in the commission of the crime." *COLJI–Crim.* No. 6:04 (1983).

Here, defendant neither objected to this instruction nor proposed an alternative instruction. Thus, reversal would require us to find that the instruction constitutes plain error, Crim.P. 52(b).

Defendant contends that the statute requires that defendant have "the intent to promote or facilitate a particular crime," while the instruction merely requires that

defendant have "knowledge that another intends to commit part of a crime."

The instruction, however, also requires that defendant intentionally aid the other person in the commission of the crime. This latter part of the instruction is essentially equivalent to the "intent to promote or facilitate the commission of the crime" requirement found in the statute.

Thus, the instruction contains sufficient language to present the elements of complicity, *see People v. Wheeler,* 772 P.2d 101 (Colo. 1989); *People v. Close,* 867 P.2d 82 (Colo. App.1993), and we find no plain error.

## VI.

Defendant next asserts that there was insufficient evidence to prove first degree murder or conspiracy to commit murder. We disagree.

The victim died in her home on August 3, 1989, at approximately 1:00 p.m. According to the testimony of a forensic pathologist, her death resulted from a blow or several blows to the head. The pathologist further testified that the fatal blows may have been struck up to 24 hours prior to the victim's death. His testimony, however, indicates that the fatal blows were most likely struck within an hour or two of death. Both defendant and his wife were present at the house during the noon hour. Testimony was also presented that the child was hanging in the master bedroom closet on the day she died and that both defendant and his wife were in that bedroom during the noon hour.

There was also abundant evidence of sustained child abuse over a period of months prior to the victim's death. The victim's emaciated body was covered with scars and wounds ranging in age from fresh to at least several months old. The victim's brother and sister testified of child abuse by both defendant and his wife. The abuse they testified to included hitting and whipping, withholding food, and "hanging" the victim in a closet.

Another witness testified that defendant struck the victim in the face during a family outing. Moreover, in a statement to a detective, defendant admitted that he had spanked the victim with a black belt, had hit her on other parts of her body with the belt, and tied her in a closet by her neck and wrists. A different detective testified that on the day the victim died that:

> He said that he and his wife had been experiencing some difficulty with [the victim's] behavior problems, and he said that during the noon hour she had been, quote, dishing out the same shit she's been dishing out lately.

It is true that there was some testimony indicating that defendant's wife had been the perpetrator of the final abuse, but such evidence was not conclusive on the issues presented to the jury.

### A.

When determining whether there is sufficient evidence to support a first degree murder conviction, the critical inquiry is whether the totality of the evidence, when viewed in the light most favorable to the prosecution, establishes beyond a reasonable doubt that the defendant intentionally caused the death of the victim and that the decision to kill was made after the exercise of reflection and judgment. *People v. Madson,* 638 P.2d 18 (Colo.1981)).

Although defendant's wife had greater opportunity to do the actual killing, we conclude that the totality of the evidence here is ample to support a jury verdict of guilty as to defendant for first degree murder. *See Gjertson v. People,* 731 P.2d 141 (Colo.1987). Moreover, the charge was based, alternatively, on a complicity theory, *see People v. Calvaresi,* 198 Colo. 321, 600 P.2d 57 (1979), and we conclude that the evidence also supports a conviction under such a theory. *See People v. Wilson,* 791 P.2d 1247 (Colo.App.1990).

### B.

In order to establish a conspiracy, there need only be circumstantial evidence which indicates that the conspirators, by their acts, pursued the same object, with a view toward attainment of that same object. *People v. LeFebre,* 190 Colo. 307, 546 P.2d 952 (1976).

Here, the record indicates both defendant and his wife persisted in a pattern of abuse and both were home during the critical time period. Taking the evidence in the light most favorable to the prosecution, we conclude that the evidence supports a conspiracy to commit first degree murder beyond a reasonable doubt. *See People v. LeFebre, supra; People v. Williams,* 707 P.2d 1023 (Colo.App.1985).

## VII.

Defendant argues that the cumulative effect of the error interjected into his trial violated his due process right to a fair trial. We disagree.

When individual allegations of error in a trial do not require reversal, but in the aggregate show the absence of a fair trial, a reversal is required. *People v. Roy,* 723 P.2d 1345 (Colo.1986).

Here, however, because there was ample evidence separate from that erroneously admitted from which the jury could find defendant guilty of the charges, the cumulative effect of any alleged error did not substantially prejudice defendant's right to a fair trial. *Compare People v. Roy, supra, with People v. Botham,* 629 P.2d 589 (Colo. 1981) and *People v. Reynolds,* 194 Colo. 543, 575 P.2d 1286 (1978).

## VIII.

### A.

Defendant next argues that he cannot be convicted of both first degree murder and child abuse resulting in death when there is only one victim. We disagree.

Under the doctrines of both merger and double jeopardy, a reviewing court must determine "whether the offenses at issue are the same or whether one is a lesser included offense of the other," and the test for this determination provides "that if each offense requires proof of a fact not required by the other offense, the offenses are sufficiently distinguishable for purposes of double jeopardy" and merger. *People v. Henderson,* 810 P.2d 1058, 1061 (Colo.1991).

As charged here, to be convicted of murder, the state must prove deliberation and intent to cause death. Section 18–3–102, C.R.S. (1986 Repl.Vol. 8B). In contrast, to be convicted of child abuse that results in death, the prosecution does not have to prove deliberation or intent, but must prove knowing or reckless injury to a child. Thus, neither offense requires proof of the same or less than all of the facts required to establish the other. *See People v. Henderson, supra; People v. Valdez,* 874 P.2d 415 (Colo.App. 1993).

### B.

Defendant further contends that the rule of lenity prohibits two convictions for a single homicide. We disagree.

Only one conviction of murder is permitted for the killing of a single victim. *People v. Lowe,* 660 P.2d 1261 (Colo.1983).

Here, the convictions are for murder and child abuse, not for two counts of murder. A person commits child abuse if he or she causes injury to a child's life or health or permits a child to be unreasonably placed in a situation which poses a threat of injury to the child's life or health. Section 18–6–401(1), C.R.S. (1986 Repl.Vol. 8A). A conviction for child abuse does not depend on the offense resulting in death.

Moreover, section 18–6–401(7)(a) provides that, when death or injury results, the offense may range from a class 2 felony to a class 2 misdemeanor. The offense is a class 2 or class 3 felony if the child abuse results in death, but is a class 3 or class 4 felony if the child abuse results in serious bodily injury. If the resulting injury is other than serious bodily injury the child abuse is a class 1 or 2 misdemeanor.

Thus, we conclude that the fact that a child victim dies is a sentence enhancement factor and not an element of the crime of child abuse. *See People v. Longoria,* 862 P.2d 266 (Colo.1993) (sentence enhancement statute, section 18–3–405(2)(c), increases the punishment for sexual assault on a child from a class 4 felony to a class 3 felony if the jury also finds that the offense was committed as a part of a pattern of sexual abuse); *People*

*v. Henderson, supra; People v. Powell,* 716 P.2d 1096 (Colo.1986) (sexual assault is a sentence enhancement factor in second degree kidnapping and conviction of second degree kidnapping does not depend on the sexual assault factor); *People v. Huggins,* 825 P.2d 1024 (Colo.App.1991) (robbery is a penalty enhancement factor in second degree kidnapping involving robbery). *Cf. People v. Valdez, supra.*

### IX.

 Defendant next contends that the trial court abused its discretion in imposing consecutive maximum aggravated range sentences. We disagree.

Sentencing is a discretionary decision that requires consideration of various factors in order to balance the interests of society and the defendant. *People v. Walker,* 724 P.2d 666 (Colo.1986).

The trial court imposed a life sentence for the first degree murder conviction, added two forty-eight-year sentences for the conspiracy and child abuse convictions, and ordered all the sentences to run consecutively. In contrast, the minimum sentence that could have been imposed was life plus two concurrent terms of eight years. *See* § 18–1–105, C.R.S. (1993 Cum.Supp.).

Here, the trial court discussed its reasoning thoroughly and took into account a variety of factors. Accordingly, the court did not abuse its discretion by imposing maximum aggravated sentences, *see People v. Walker, supra,* or by requiring the sentences to run consecutively. *Compare People v. Duran,* 188 Colo. 207, 533 P.2d 1116 (1975) *with People v. Edwards,* 198 Colo. 52, 598 P.2d 126 (1979).

The judgment and sentence are affirmed.

JONES and DAVIDSON, JJ., concur.