The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Greg J. VILLANO, Defendant–Appellant.

No. 05CA0709.

Colorado Court of Appeals,
Div. II.

March 6, 2008.

John W. Suthers, Attorney General, Susan E. Friedman, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Bruce W. Sarbaugh, Boulder, Colorado, for Defendant–Appellant.

Opinion by Judge CARPARELLI.

Defendant, Greg J. Villano, appeals the judgment of conviction of distribution of methamphetamine (25 to 450 grams), possession of methamphetamine with intent to distribute, conspiracy to distribute methamphetamine, special offender-deadly weapon, and special offender-importation. We affirm.

## I. Background

In August 2003, an undercover police officer began buying methamphetamine from Rocky and Elaine Beltran. Rocky Beltran told the officer that his source lived in Bloomfield, New Mexico. In September 2003, the officer arranged to buy drugs from Beltran, who agreed to call the officer as soon as his source arrived. Police watched Beltran's mobile home to identify the source and saw defendant's vehicle parked at Beltran's mobile home during the drug sale.

On October 8, 2003, the officer arranged to buy more drugs from Beltran and suggested that Beltran go to his source's house to see why the source was taking so long to deliver the drugs. The officer then saw Beltran arrive at defendant's house in Bloomfield, New Mexico.

On October 9, 2003, police saw defendant's vehicle parked outside Beltran's mobile home while Beltran sold methamphetamine to the officer. After the vehicle left Beltran's mobile home, police stopped it and asked the driver for directions. They video-taped the driver, and the officer later identified defendant as the driver.

On October 13, 2003, the officer agreed to buy two ounces of methamphetamine from Beltran the next day. On October 14, the undercover officer and another police officer saw a vehicle belonging to E.H. cross the New Mexico border and enter Colorado. They had previously seen the vehicle parked at defendant's house. They followed the vehicle and stopped it as it entered Beltran's trailer park. E.H. was driving, and defendant was a passenger. Police arrested both men. Defendant was carrying a forty-five caliber pistol and two ounces of methamphetamine. Police also arrested Rocky and Elaine Beltran. Defendant and the Beltrans were charged with various counts, but E.H. was not charged.

## II. Affirmative Defense

Defendant first contends that the trial court erred when it did not require the prosecution to disclose information that he contends would have supported an affirmative defense of entrapment. We disagree.

At trial, defendant alleged that E.H. was a police informant and helped entrap him. He argued that the prosecution was required to disclose to him that E.H. had an agreement with federal law enforcement agencies.

A defendant has a constitutional right to discovery of exculpatory information. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). To find reversible error, we must conclude that there is "a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Salazar v. People*, 870 P.2d 1215, 1222 (Colo. 1994).

Here, the trial court reviewed the sealed evidence and concluded that it would be of no use to defendant. We have also reviewed the sealed documents and found nothing that would have been exculpatory or otherwise supported defendant's entrapment defense. We conclude that the trial court did not err when it sealed the evidence and declined to require that the prosecution disclose it to defendant.

## III. Continuance

Defendant next contends that the trial court erred when it denied his motion to continue the trial to allow him to obtain potentially exculpatory evidence probative of entrapment. We disagree.

A motion for a continuance is within the sound discretion of the trial court, and we review the trial court's decision for abuse of discretion. *People v. Bakari*, 780 P.2d 1089, 1092 (Colo.1989). "A trial court abuses its discretion when it acts in a manifestly arbitrary, unfair, or unreasonable manner." *People v. Ellis*, 148 P.3d 205, 211 (Colo.App. 2006). "[A] defendant must also demonstrate actual prejudice arising from denial of the continuance." *People v. Denton*, 757 P.2d 637, 638 (Colo.App.1988).

Here, defendant filed three motions to continue. The prosecution did not object to the first motion, and the trial court granted it. Although the prosecution objected to the second motion to continue, the court granted it. The court conducted a hearing regarding the third motion.

At the hearing, defendant told the trial court that he intended to present an entrapment or duress defense based on his belief that E.H. was a police informant, and that he needed time to subpoena information about E.H. from law enforcement authorities in New Mexico. The court denied the motion, concluding that (1) defendant's representation that he could obtain tangible evidence was speculative; (2) defendant did not describe the nature of the tangible evidence or explain how it would be exculpatory; and (3) trial had been continued twice.

The trial court did not abuse its discretion. Defendant's motion did not sufficiently describe the factual information he expected to uncover, the basis of his belief that E.H. was an informant, or, even assuming E.H. was an informant, how E.H. had allegedly entrapped him. Thus, he did not show that it was likely that an additional continuance would have enabled him to discover exculpatory evidence. Consequently, he has also failed to show that the denial of his motion resulted in actual prejudice.

## IV. Beltran's Statements

We also reject defendant's contention that the court violated his Sixth Amendment right to confrontation when it admitted testimony by a police officer regarding two out-of-court statements that Rocky Beltran made to the officer.

The prosecutor introduced statements made by Beltran to the police in two different circumstances. Beltran first made statements to an undercover police officer when arranging the drug transactions. He made additional statements after he was arrested. Police officers testified as to what Beltran had told them on each occasion.

### A. Law

The Confrontation Clause prohibits the admission of testimonial hearsay against a defendant unless the declarant is unavailable to testify at trial and the defendant had a prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 68–69, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004); *Raile v. People*, 148 P.3d 126, 130 (Colo.2006).

To determine whether a statement is testimonial in nature, we ask whether a reasonable person in the declarant's position would anticipate the statement being used against the accused in the investigation or prosecution of the crime. *People v. Vigil*, 127 P.3d 916, 925 (Colo.2006). Statements made during the course of a police interrogation are "testimonial." *Crawford*, 541 U.S. at 52, 124 S.Ct. 1354; *Vigil*, 127 P.3d at 922.

When a statement is nontestimonial, we must determine whether the declarant is unavailable and whether the statement bears adequate indicia of reliability. A statement is reliable if it falls within a firmly rooted hearsay exception or if there is a showing of particularized guarantees of trustworthiness. *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); *Compan v. People*, 121 P.3d 876 (Colo.2005).

Under CRE 801(d)(2)(E), a statement is not hearsay if it is offered against a party to a conspiracy and was made by a co-conspirator during the course and in furtherance of the conspiracy. A showing of unavailability is not required to admit co-conspirators' out-of-court statements. *United States v. Inadi*, 475 U.S. 387, 399–400, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986). The admissibility of co-conspirator statements is so firmly rooted in law that a court need not

independently inquire into the reliability of a co-conspirator's statement. *Bourjaily v. United States,* 483 U.S. 171, 183, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987); *People v. Robinson,* 874 P.2d 453, 460 (Colo.App.1993).

■ A trial court may consider the statement of an alleged co-conspirator to determine whether a conspiracy existed, but there must also be some independent evidence establishing that the defendant and the declarant were members of the conspiracy. *People v. Mayfield–Ulloa,* 817 P.2d 603, 605 (Colo. App.1991).

### B. Beltran's Pre–Arrest Statements

■ Defendant objected to admission of the undercover officer's testimony regarding the statements Beltran made to him as they arranged the drug transactions. Therefore, we review the alleged violation of the right to confrontation de novo. *Bernal v. People,* 44 P.3d 184, 198 (Colo.2002).

In the course of and in furtherance of the conspiracy to buy and sell methamphetamine, Beltran gave the undercover officer information about his sources, and agreed and arranged to sell the drugs to the officer. Like the trial court, we conclude that those statements were not made in response to police interrogation, and that a reasonable person in Beltran's position would not make such incriminating statements if he believed they would later be used against him and his co-conspirators in the investigation or prosecution of the crime. *See United States v. Townley,* 472 F.3d 1267, 1275 (10th Cir.2007). Therefore, although Beltran was not present in court and his pre-arrest statements were presented through the testimony of the undercover police officer, we conclude that the statements were nontestimonial for *Crawford* purposes.

Moreover, under CRE 801(d)(2)(E), the out-of-court statement of a co-conspirator is not hearsay, and its admissibility is firmly rooted in the law. The reliability of such statements is premised on the likelihood that a co-conspirator would not make statements while anticipating that they would be used to prosecute those involved in the conspiracy.

For these reasons, we conclude that the trial court did not err when it admitted Beltran's pre-arrest statements to the undercover officer.

### C. Beltran's Post–Arrest Statements

■ Defendant did not contemporaneously object to the admission of statements Beltran made when he was arrested. We therefore review for plain error. Even assuming that the officer's testimony relating Beltran's post-arrest statements was not admissible, we perceive no basis to reverse.

Witnesses other than Beltran provided ample testimony implicating defendant in the drug sales. In addition, police found a gun and amphetamine on defendant's person when they arrested him, and a video tape admitted into evidence showed defendant driving a car that had been present at Beltran's house in the course of the sales. Because there was substantial evidence of defendant's involvement in the conspiracy, we conclude that admission of Beltran's post-arrest statements did not so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. Accordingly, we conclude any error in admitting the statements does not require reversal.

### V. Probable Cause

■ Defendant contends that the police lacked probable cause when they arrested him, and, consequently, that the trial court erred when it admitted evidence obtained as a result of his warrantless arrest. We disagree.

■ A determination of probable cause is a mixed question of fact and law that we review de novo. *People v. Matheny,* 46 P.3d 453, 461 (Colo.2002). "Probable cause, which is the touchstone of a valid warrantless arrest, exists when the facts and circumstances within an arresting officer's knowledge are sufficient to warrant a person of reasonable caution to believe that an offense has been or is being committed by the person about to be arrested." *People v. Tottenhoff,* 691 P.2d 340, 343 (Colo.1984).

Here, police knew Beltran was engaged in the sale of methamphetamine, saw defendant's car at Beltran's house in the course of the conspiracy, made personal contact with defendant after he left Beltran's house, and saw Beltran arrive at defendant's house after they suggested that he go to his supplier to get drugs to sell. After the undercover officer arranged to buy methamphetamine from Beltran and understood that he was waiting for his supplier to arrive with the drugs, defendant arrived at Beltran's house.

Therefore, we conclude that the officers had probable cause to arrest defendant, and, thus, that the trial court did not err when it admitted evidence seized pursuant to defendant's lawful arrest.

### VI. Voluntariness of Statements

Defendant contends that his statements to police were involuntary and the product of coercive police conduct. On this premise, he asserts that the trial court erred when it did not suppress those statements. We disagree.

 A defendant's statements are admissible only if they are voluntary. *People v. Raffaelli*, 647 P.2d 230, 234 (Colo.1982). A statement is voluntary if it is free and uncon-strained. We must consider the totality of the circumstances to determine whether a statement is voluntary. *Raffaelli*, 647 P.2d at 235. We will not set aside the trial court's findings of fact unless they are clearly erroneous, but we review legal conclusions de novo. *People v. Medina*, 25 P.3d 1216, 1223 (Colo.2001).

Here, the trial court found that defendant volunteered information to the unarmed officer. Because there is record support for the trial court's finding that, under the totality of the circumstances, defendant's statements were voluntary, we conclude that the court's findings were not clearly erroneous. On these facts, we also conclude that the statements were voluntary.

Judgment affirmed.

Judge ROTHENBERG and Judge BERNARD concur.