22CA0105 Peo v Silva 09-19-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA0105
El Paso County District Court No. 21CR335
Honorable Jill M. Brady, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Timothy Lee Silva,

Defendant-Appellant.

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE DUNN
Navarro and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 19, 2024

Philip J. Weiser, Attorney General, Brittany Limes Zehner, Assistant Solicitor
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Kira L. Suyeishi, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1      Defendant, Timothy Lee Silva, appeals the judgment of conviction entered on jury verdicts finding him guilty of two felony drug charges.  We affirm the conviction but remand the case to allow Silva the opportunity to seek an indigency waiver of the drug offender surcharge.

## I.      Background

¶ 2      Police began investigating Christopher Padilla after receiving complaints from neighbors that Padilla was selling drugs from his home.  That investigation led to the discovery that Padilla had multiple active arrest warrants.

¶ 3      As a result, the police began surveilling Padilla's house one evening in 2021.  Soon after, they saw Padilla exit the house.  Within a minute or two, officers saw a car stop in front of the driveway and Padilla get in the passenger seat.  Officers immediately initiated a traffic stop, blocking the car with a police vehicle.  Padilla then got out of the car, and an officer arrested him.  During the arrest, Padilla dropped cash on the ground.

¶ 4      Roughly simultaneously with Padilla's arrest, another officer ordered the driver — later identified as Silva — out of the car, handcuffed him, and had him sit on the curb.  The first officer saw

1

a clear bag of drugs, some cash, a wallet, and a cell phone on the front passenger floorboard of Silva's car. Officers then arrested Silva and searched his car.

¶ 5    Both Padilla and Silva consented to a search of their respective phones, which showed the following exchange earlier that evening:

> [Padilla:] Can i come meet u when u get off i have some one waiting and i don't want them to bail i won't need it anymore if they do
>
> [Silva:] Pulling up to my house now I'll call u to tell u where to meet
>
> [Padilla:] K ty

And Padilla's phone showed three short calls from a "Timothy" minutes before Silva arrived at Padilla's home.

¶ 6    As relevant here, the prosecution charged Silva with possession with intent to distribute a controlled substance and conspiracy to distribute a controlled substance. The jury found Silva guilty as charged, and the trial court sentenced him to ten years in community corrections.

¶ 7    On appeal, Silva contends the trial court erred by (1) denying his motion to suppress evidence; (2) admitting hearsay statements; and (3) admitting an unauthenticated cell phone extraction report.

He also says that the cumulative effect of these errors requires reversal, and, finally, that the court erred by imposing a drug offender surcharge outside his presence and without giving him an opportunity to request an indigency waiver. We address each contention in turn.

## II.     Motion to Suppress

¶ 8     Contending that the officers had no independent probable cause to detain him or search his car, Silva moved to suppress all the evidence derived from what, in his view, was an unlawful seizure.

¶ 9     At the suppression hearing, the officer who arrested Padilla testified that at the same time she was arresting Padilla, another officer told the driver (Silva) to get out of the car, handcuffed him, and had him sit on the curb. The arresting officer explained that they detained the driver to identify him and make sure they "knew who he was before [they] let him go." The officer stated that Silva was not under arrest when they detained him and, at that point, they had no information that he was involved in any criminal activity.

¶ 10    After the officer placed Padilla in the back of her patrol car, she walked toward Silva's car.  As she neared the car, the officer looked through the front passenger window and saw a clear plastic bag containing a white crystalline substance, some cash, a wallet, and a cell phone on the front passenger floorboard.  Given her training and experience, the officer said she "immediately" recognized the substance as methamphetamine.  The officer testified that no more than one minute elapsed between placing Padilla in her patrol car and seeing the drugs in Silva's car, with the entire encounter lasting no more than two minutes.

¶ 11    The trial court denied the motion to suppress, ruling that under *People v. Taylor*, 41 P.3d 681 (Colo. 2002), it was lawful for the officers to briefly detain Silva while effectuating Padilla's arrest.  And the court found that after the officer saw the methamphetamine in plain view, it was reasonable for the officers to search Silva's car and seize the drugs and related evidence.

¶ 12    Silva now challenges this ruling.  He maintains that he was unlawfully seized and that the court erred by not suppressing the evidence derived from that unlawful seizure.

## A. Standard of Review and Applicable Law

¶ 13 The United States and Colorado Constitutions prohibit unreasonable searches and seizures. U.S. Const. amend. IV; Colo. Const. art. II, § 7; *People v. Allen*, 2019 CO 88, ¶ 15. Evidence derived from an unconstitutional seizure must be excluded at trial unless an exception to the exclusionary rule applies. *See People v. Thompson*, 2021 CO 15, ¶ 20.

¶ 14 A trial court's suppression ruling presents a mixed question of fact and law, meaning we defer to the court's factual findings if supported by the record but review its legal conclusions de novo. *Allen*, ¶ 13.

## B. The Suppression Order is Consistent with *Taylor*

¶ 15 In *Taylor*, an officer stopped the defendant's vehicle to arrest a passenger who had outstanding warrants. 41 P.3d at 683-84. After arresting the passenger — which took about two minutes — officers removed the defendant from the vehicle, physically escorted him to the rear of the car, frisked him, and "essentially pinned" him against the car. *Id.* at 684. One officer further restrained the defendant by extending an arm to prevent the defendant from moving toward the passenger compartment. *Id.* While the

5

defendant was physically detained, another officer searched the defendant's car and found a small case with drug paraphernalia and cocaine. *Id.* The officers then arrested the defendant. *Id.* About nineteen minutes elapsed between the passenger's arrest and the defendant's arrest. *Id.*

¶ 16　　The supreme court agreed that by stopping the defendant's vehicle to arrest the passenger, police seized the defendant. *Id.* at 687; *cf. Arizona v. Johnson*, 555 U.S. 323, 333 (2009) (recognizing that a driver and passengers are seized when police stop a vehicle to investigate a traffic violation). But it held that the seizure was "reasonable" and "constitutionally permissible." *Taylor*, 41 P.3d at 694. In so holding, the court recognized that probable cause to arrest the passenger could not constitute probable cause or even reasonable suspicion with respect to the driver (the defendant). *Id.* at 687. Still, where the defendant is in the same car as a known suspect, the court held that "'the balance of interests precludes insistence upon some quantum of individualized suspicion' that [the] [d]efendant is engaged in criminal activity to justify a seizure." *Id.* at 688 (quoting *Delaware v. Prouse*, 440 U.S. 648, 654-55 (1979)). Thus, the court concluded that the need to arrest the

passenger warranted the "relatively minimal intrusion" on the defendant's rights and that "the scope of the intrusion was reasonably related to the circumstances which justified the interference in the first place." *Id.*

¶ 17 The supreme court further concluded that once the passenger had been arrested, the officers had no justification to detain the defendant — until, that is, they found the cocaine. *See id.* at 688-89. Even so, the court declined to apply "Fourth Amendment exclusionary principles" to the cocaine, reasoning that the cocaine was found during a lawful search incident to the passenger's arrest and not because of the defendant's detention. *Id.* at 689. Having so concluded, the court didn't consider "whether the officers' actions after stopping the vehicle but prior to finding the cocaine constituted a seizure of [the] [d]efendant." *Id.*

¶ 18 Consistent with *Taylor*, we conclude that Silva's brief seizure was constitutionally reasonable. True, Silva was ordered out of the car and handcuffed while the officers sought to identity him. But that alone doesn't necessarily transform the one-minute detention into an unconstitutional seizure. *Cf. Johnson*, 555 U.S. at 331 (explaining that police may order the driver and passengers out of

7

the car pending completion of a traffic stop); *People v. Oliver*, 2020 COA 150, ¶¶ 27-28 (stating that the use of force or restraint, such as handcuffs, "does not automatically convert an investigatory detention into an arrest" so long as the "scope and character of the intrusion are reasonably related to its purpose"). After all, the defendant in *Taylor* was subject to a similar level of restraint where he was "essentially pinned" against a car and for some period also physically restrained by an officer. 41 P.3d at 684. And the brief restraint here — roughly one minute between Padilla's arrest and the plain view drug discovery — was far shorter than the nineteen-minute restraint in *Taylor*. *See id.* at 684, 689. Because Silva's detention occurred almost simultaneously with Padilla's arrest, we agree with the trial court that Silva's detention "was not unreasonable because it was part and parcel" of Padilla's arrest.

We therefore reject Silva's contention that, under these circumstances, the officers unconstitutionally seized him.[1]

¶ 19　　But we needn't even go that far. That's because — much like *Taylor* — the evidence seized from Silva's car was not the fruit of his short detention; rather, it was lawfully discovered in plain view within a minute of Padilla's arrest. *See id.* at 689. Indeed, Silva doesn't dispute that the officer discovered the drugs in plain view. *See People v. Swietlicki*, 2015 CO 67, ¶ 19 (listing the elements for the plain view exception). Instead, he speculates that but for the handcuffing, the officer would not have had the opportunity to see the drugs in his car. But the record doesn't support that

[1] Silva mostly centers his argument on whether there was probable cause or reasonable suspicion to handcuff him. But these arguments aren't helpful because, under *Taylor*, where officers initiate a traffic stop to effectuate the lawful arrest of one occupant of the car and another occupant is incidentally detained, the supreme court eschewed the "traditional method of ascertaining the reasonableness of Fourth Amendment seizures" as "too rigid." *People v. Taylor*, 41 P.3d 681, 687 (Colo. 2002). In analyzing the reasonableness of the defendant's detention, the *Taylor* court categorized it as "neither an arrest nor an investigatory stop" and didn't analyze the reasonableness of the detention under traditional Fourth Amendment principles. *See id.* at 687-88. To the extent Silva suggests that *Taylor* is no longer good law because it "predated governing case law," we're bound to follow supreme court decisions unless they're overruled or abrogated. *See People v. Kern*, 2020 COA 96, ¶ 42.

hypothesis. Rather, the record supports the court's finding that the officer saw the drugs through the car window right after she placed Padilla in the patrol car. And given the speed and brevity of the entire incident, no evidence suggests the officers did anything to extend Silva's detention. *Cf. Johnson*, 555 U.S. at 333 ("An officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop.").

¶ 20　All this said, we conclude that the trial court didn't err by denying Silva's motion to suppress.

### III.　The Messages Between Silva and Padilla

¶ 21　Over Silva's hearsay objection, the trial court admitted the text messages Padilla sent to Silva (described above) as nonhearsay statements of a co-conspirator.[2]

¶ 22　Silva maintains that Padilla's statements were inadmissible hearsay, not co-conspirator statements.

---

[2] The court admitted Silva's messages to Padilla as nonhearsay admissions by a party-opponent. CRE 801(d)(2)(A). Silva doesn't challenge that ruling.

¶ 23    We review evidentiary rulings for an abuse of discretion. *People v. Ambrose*, 2021 COA 62, ¶ 53. A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law. *Id.*

¶ 24    Although hearsay statements are generally inadmissible, CRE 802, a statement made by a co-conspirator "during the course and in furtherance of the conspiracy" is not hearsay and, therefore, may be admissible, CRE 801(d)(2)(E); *see also People v. Archer*, 2022 COA 71, ¶ 35. To admit such a statement, the court must find that a conspiracy existed and that the statement was made during the course of and in furtherance of the conspiracy. *Archer*, ¶ 36. As to whether a conspiracy existed, the court may consider the statements themselves, "but there must also be some independent evidence establishing that the defendant and the declarant were members of the conspiracy." *Id.* (quoting *People v. Villano*, 181 P.3d 1225, 1229 (Colo. App. 2008)).

¶ 25    We are unpersuaded by Silva's argument that the messages themselves were the only evidence presented to establish a conspiracy between Padilla and Silva to sell drugs. To the contrary, the evidence showed that

11

- neighbors had reported suspected drug sales at Padilla's home, including that "a bunch of cars" were "coming and going" from Padilla's home — as many as fifty cars a month according to one complaint;

- Padilla had three active warrants related to previous drug convictions;

- while surveilling Padilla's home, officers watched Silva's car pull up to the home and Padilla get in, and after immediately stopping the car, officers saw Padilla drop cash; and

- the officers saw methamphetamine, cash, and Padilla's wallet and cell phone on the passenger floorboard where he had been sitting.

¶ 26 Collectively, this is "some independent evidence" of a conspiracy to sell drugs. *Id.* Combined with the messages themselves — which suggested that Silva was selling the drugs to Padilla who, in turn, wanted to sell them to someone else — the court could conclude that it was more likely than not that Padilla and Silva were engaged in a conspiracy to sell drugs and that Padilla made those statements in furtherance of the conspiracy.

¶ 27    Because there was some independent evidence showing the existence of a conspiracy between Silva and Padilla to sell drugs, we see no abuse of discretion in the admission of the text messages.

### IV.    The Cell Phone Extraction Report

¶ 28    The officer who arrested Padilla testified that on the night of the arrest, she took a photo of Padilla's phone showing messages between Padilla and "Timothy."  The photo showed that the messages were exchanged the same evening as the arrest and included a message from Padilla asking to meet and a response that Timothy would call Padilla about a meeting.  The photo also showed three short calls from Timothy to Padilla.  Silva arrived at Padilla's home roughly ten minutes after the last call.  The prosecutor admitted the photo of Padilla's phone at trial, and the officer authenticated it.  Silva doesn't challenge the authenticity of this exhibit.

¶ 29    The corresponding messages from Silva's phone, however, were admitted through a Cellebrite extraction report.  The officer who created the extraction report didn't testify at trial.  But the officer who observed the messages on Padilla's phone testified that

she reviewed the messages downloaded from Silva's phone and that they were consistent with the messages she saw on Padilla's phone.

¶ 30    Silva contends that the trial court erred by admitting the extraction report because it was unauthenticated hearsay.  And he maintains that admission of this hearsay evidence violated his confrontation rights.

## A.    Standard of Review

¶ 31    As before, we review evidentiary rulings for an abuse of discretion.  *Ambrose*, ¶ 53.  And we review de novo whether a trial court violated a defendant's confrontation rights.  *Id.* at ¶ 65.

¶ 32    We review preserved evidentiary errors for harmless error and unpreserved ones for plain error.  *Id.* at ¶ 53.  Under harmless error analysis, we will not reverse for a preserved error unless the error substantially influenced the verdict or impaired the fairness of the trial.  *Id.*  And under plain error analysis, we reverse for an unpreserved error only where an obvious and substantial error casts serious doubt on the fundamental fairness of the trial and the reliability of the conviction.  *People v. Abad*, 2021 COA 6, ¶ 43.

14

B.    Any Error in Admitting the Extraction Report Was Harmless

¶ 33    The parties agree that Silva objected to the extraction report on hearsay grounds.  But they dispute whether he preserved his authentication objection.

¶ 34    We needn't resolve this dispute, however, because even assuming that Silva preserved this contention and that the trial court erred by admitting the extraction report, the error was harmless.  The most significant information from the extraction report — the messages between Silva and Padilla arranging a meeting the night of the arrest — was cumulative of the photo of Padilla's phone showing the same key messages (indeed, defense counsel objected to the messages in the extraction report as cumulative).  *See People v. Faussett*, 2016 COA 94M, ¶ 54 (explaining that improperly admitted evidence may be harmless if cumulative of other properly admitted evidence).

¶ 35    To be sure, Padilla's phone reflected just the name "Timothy," while the extraction report showed the messages were from "Timothy Silvas-Rosales."  But considerable circumstantial evidence showed that Silva was the "Timothy" texting Padilla, including that (1) the messages occurred within half an hour of Silva's arrival at

15

Padilla's home; (2) Silva's first name is Timothy; (3) officers saw Silva arrive at Padilla's home the evening of the arrest; and (4) officers found a document in the center console of the car Silva was driving with the name "Timothy Silva." From all this, the jury could easily infer that the "Timothy" that Padilla was texting the night of the arrest was Silva. *See People v. Clay*, 644 P.2d 81, 82 (Colo. App. 1982) ("A jury can draw reasonable inferences that arise from the facts of the case.").

¶ 36   Under these circumstances, we can't conclude that the extraction report substantially influenced the jury's verdict or impaired the fairness of Silva's trial. Thus, we conclude that any error in admitting the report was harmless.

¶ 37   Because we conclude that any error in admitting the extraction report was harmless, it necessarily can't be substantial. *See Hagos v. People*, 2012 CO 63, ¶ 14 (explaining that, because the plain error standard permits appellate courts to correct "particularly egregious errors," unpreserved errors do not warrant reversal unless they impair the reliability of the conviction to a greater degree than under harmless error review) (citation omitted). Thus, we also reject Silva's unpreserved challenge that the

admission of the extraction report violated his confrontation rights.[3] *See id.* (we review unpreserved constitutional errors for plain error).

## V. Cumulative Error

¶ 38 Silva contends that the alleged errors warrant reversal when considered together. But "[t]he doctrine of cumulative error requires that numerous errors be committed, not merely alleged." *People v. Conyac*, 2014 COA 8M, ¶ 152. Because we've assumed a single nonprejudicial error, we reject Silva's cumulative error claim.

## VI. Drug Offender Surcharge

¶ 39 The trial court didn't impose a drug offender surcharge at sentencing, but it later added a $6,000 surcharge to the mittimus. *See* § 18-19-103(1)(b), C.R.S. 2024 (requiring a convicted drug offender to pay a surcharge).

¶ 40 The parties agree — as do we — that the trial court erred by imposing the surcharge "outside [Silva's] presence and without

---

[3] Because the messages within the extraction report are either admissions of a party-opponent or statements of a co-conspirator, they are not hearsay. CRE 801(d)(2)(A), (E). Thus, the confrontation clause doesn't apply to the messages in the report. *See People v. Godinez*, 2018 COA 170M, ¶ 78 ("[T]he admission of nonhearsay does not implicate a defendant's confrontation rights under either the United States or Colorado Constitutions.").

17

giving him an opportunity to ask for a waiver and receive a hearing." *Yeadon v. People*, 2020 CO 38, ¶ 15; *see also* § 18-19-103(6)(a) (allowing the sentencing court to waive the surcharge if it finds that the offender is financially unable to pay any portion of the surcharge).

¶ 41 We therefore must remand the case to the trial court to allow Silva the opportunity to "request a waiver and ask for a hearing to show that he is financially unable to pay any portion of" the surcharge. *Yeadon*, ¶ 15.

## VII. Disposition

¶ 42 We affirm the judgment of conviction and remand the case to the trial court with directions.

JUDGE NAVARRO and JUDGE GOMEZ concur.